Chatham *vs.* Bradford.

---

BENJAMIN F. CHATHAM, plaintiff in error, *vs.* JESSE J. BRADFORD, sheriff, defendant in error.

Whilst it is the duty of the clerk of the Superior Court to keep a proper index of his books of record, so that one searching the records may easily find what is or is not contained therein, yet a deed or mortgage which is in fact recorded, does not cease to be notice and to be properly recorded, simply because the index to the record book fails to show where it may be found.

. Registry. Clerk of Superior Court. Mortgage. Before Judge JAMES JOHNSON. Muscogee Superior Court. October Term, 1872.

At November term, 1871, of the Superior Court of Muscogee county, judgment was rendered in favor of plaintiff against J. H. Bramhall, for $150 00 principal, besides interest, protest fees and costs, on which execution issued.

The defendant, Bradford, as sheriff, had in his hands— raised by levy and sale of property of said Bramhall, under a mortgage *fi. fa.*, some $1,800 00, and while so holding said money, said *fi. fa.* in favor of Chatham and two Justice Court *fi. fas.* were lodged in his hands, claiming enough to satisfy them, and a demand in writing for their payment was served on said sheriff.

At the October term, 1872, a rule was granted by the Court requiring said sheriff to pay over to said Chatham the amount due on his said *fi. fa.*, or show cause to the contrary.

In response to said rule, said sheriff answered amongst other things, that he had in his hands said mortgage *fi. fa.*, dated 27th day of August, 1872, issued in favor of E. C. Bramhall *vs.* J. H. Bramhall, for $4,331 12 principal, and $277 59 be-

sides cost; that said *fi. fa.* was issued upon the foreclosure of a mortgage made by said J. H. Bramhall to said E. C. Bramhall, dated 28th day of February, 1871, upon all the stock of goods contained in store then occupied by said J. H. Bramhall, and duly recorded in the clerk's office of said county, within three months from the date of the said mortgage; that said goods were levied on under said mortgage *fi. fa.* on September 2d, 1872, and were sold at sheriff's sale on the first Tuesday in November, 1872, for $1,824 10, and that, after deducting $62 27 expenses, a balance remained in his hands of $1,761-83; that whilst said money was in his hands, there was placed in his hands by the sheriff's attorney, the following *fi. fas.* claiming the money, to-wit:

*Fi. fa.* in favor of plaintiff Chatham *vs.* said J. H. Bramhall obtained first day of December, 1871, in Muscogee Superior Court for $150 00 principal, $9 18 interest, protest $3 00, cost $9 10.

Justice Court, *fi. fa.* in favor of John O'Brien *vs.* J. H. Bramhall, dated 31st October, 1872, for principal $100 00, interest $15 75, cost and protest fees $15 65.

Also, Justice Court *fi. fa.* in favor of Wilcox Silver Plate. Company *vs.* J. H. Bramhall, dated 15th June, 1872, for $66 70 principal, $3 50 interest and $3 05 cost.

That, as all of said *fi. fa's.* were founded on judgments obtained since the date of said mortgage, and the money in his hands was raised from sale of the mortgaged property, he had paid said balance to the attorneys of said mortgagee; that he had no other money raised from the sale of property of said Bramhall, and that he knew of no other property.

The plaintiff thereupon traversed said answer, and alleged that said mortgage was not duly recorded within three months of the execution thereof; nor until long after the rendition of said judgment in favor of said plaintiff, and that, therefore, said *fi. fa.* in favor of plaintiff ought to be paid out of the money so raised by said sheriff.

The issue thus formed, was, by consent, submitted to the Court without the intervention of a jury.  L. T. Downing,

attorney for plaintiff, testified that after said judgment was rendered in favor of Chatham (some time in the spring of 1872), he was informed that a mortgage upon his goods had been executed by said Jacob H., and witness thereupon went to the clerk's office of said Court to examine the record of it; that he looked for it, and got the person in the office, writing for the clerk, to assist him in searching; they searched in the record book of deeds, but did not and could not find that said mortgage had been recorded—nor could he get any item of it, or of the record of it, from said person so then in charge of said office; that both he and said person whom he had requested to assist him in the finding of said record searched in the index of record book of deeds then in use, and which had been in use for over a year, for the recording of deeds, to-wit: deed book *O.*, but the index contained no entry of such a mortgage, nor of any record thereof, nor any reference thereto; that he (witness) then, having an idea that Messrs. Peabody & Brannon might represent the mortgagee, called on them for information in regard to it, and was at their office shown the said mortgage, and from the clerk's certificate of record thereon learned the time it had been registered in said deed book *O.*, to-wit: the 27th day of May, 1871, and on page 699 of said book; that by these references he was able to find, and did find by them alone, the registry of said mortgage; that afterwards, on again examining said record and the index to said book *O*, he found that said registry had been indexed. The date of the execution of the mortgage was the 28th day of February, 1871, and the date of registry thereof was the 27th day of May, 1871.

For defendant, George Y. Pond testified that in May, 1871, he was clerk of Superior Court of said county; that the registry of said mortgage in deed book *O.* was done by Mr. Duer, who was then writing for him in his office; and that the entry of reference to said registry in the index to said book *O* was made by Mr. Terry, who, also, had written for witness in his office, and whom he had requested to go through the book and index such deeds, the registration of which had not

been indexed; that said mortgage had been lodged in the office in the usual way for record, and was actually recorded on the 27th day of May, 1871.

The *fi. fa.* in favor of plaintiff *vs.* said Bramhall, and also the mortgage *fi. fa.* against him issued on the foreclosure of said mortgage, which was foreclosed on the 30th day of May, 1872, with entries on said *fi. fa.* were considered in evidence.

The demand of plaintiff, in writing, upon the sheriff for payment of his *fi. fa.* out of money in his hands raised from sale ₍of said goods under said mortgaged *fi. fa.* and which demand was made December 11th, 1872, was also in evidence.

The Court refused a rule absolute against the sheriff, and Chatham excepted.

MOSES & DOWNING, for plaintiff in error.

PEABODY & BRANNON, for defendant.

McCAY, Judge.

The sole question made by this record is, whether it is a necessary part of the *recording of a deed* that the clerk shall enter in the index of the book the names of the parties under the proper letter, with the page where the record can be found. Is this necessary to make a complete record of a deed? It cannot be denied that the record of a deed in a large book, with many other records of like character, and without any index to enable one searching to find the page, furnishes, in fact, but a poor notice of the existence of the deed; and without any question, a failure by the clerk to keep such an index is a wrong for which he is answerable to the party injured. But after much consideration we are of the opinion that the entry in the index is not a part of the process of record, so as that the record is null without it. Our Acts for the recording of deeds, beginning in 1755, do none of them point out the mode ·of registry, nor do they, any of them, require the clerk to keep

an index. The Act of 1815, Cobb's Digest, 191, provides that the Inferior Court shall see to it that the books are lettered and indexed. So, too, the Code, sections 2663, 2671. It is, also, true that in prescribing the duty of the clerk, section 256, paragraph 7, the Code requires him to index his record books.

But there is nothing in any of these provisions prescribing that the indexing is a necessary part of the record. When a deed has been duly copied upon the record book, it is difficult to say that it is not recorded. The steps to be taken for easy reference, as it seems to us, are matters with which the owner of the deed has nothing to do. He has caused his deed to be copied upon the public books; that is all the law requires of him, and that is all he can do. If any one desires to find the record, he can find it if he will take the trouble. The index is for the benefit of the searcher. It is the means furnished by the public to its citizens for an easy reference to the books of record. It is a provision, not for the benefit of the holder of the deed, but for the convenience of those who desire to examine the record. Ease of access is wholly a question of degree. A book may be indexed by the name of the grantor or grantee, or both—it ought to be by both. It is often convenient, too, in this State, to index the numbers of the lots of land conveyed. But, obviously, all these are matters for the convenience of those who desire to examine the books. If the clerk fails to do his duty, he injures those who desire to search. The duty is, therefore, to the searcher and to the public, and not to the holder of the deed. And this has, as we think, always been the understanding of the law in this State. Many of our books of record have no indexes, or very imperfect ones, and for many years this has been true. Ease of access to a record is a question of degree; it is *possible* to get at the fact of record or no record without any index. If the books be few and small, it is easy. If the books be many and large, it is difficult. And so, the index may be single or double. The ease or difficulty of finding what is on the record, is not a matter in which the owner of the deed

is concerned.  We have been able to find but one case in the books bearing upon this subject, to-wit: Sawyer *vs.* Adams, 8 Vermont, 172.  In this case, the deed was recorded in a book that had not been used for years.  It was not indexed, even in that; and this was done intentionally by the clerk to conceal the fact.  The Court held the record no notice, but there was a dissenting opinion.  That was a much stronger case of failure of duty than this.  We put our decision mainly on our own statutes, and on the condition of our records, and what we believe to be the uniform practice in this State.

Judgment affirmed.