[No. 58.  Decided December 10, 1890.]

## WILLIAM RITCHIE v. J. R. GRIFFITHS AND EDWARD METCALFE.

REGISTRATION OF DEEDS—INDEXING—CONSTRUCTIVE NOTICE.

Under the registry law of this state (Session Laws 1869, p. 313), the depositing of a deed for record in the office of the county auditor does not operate as constructive notice to the public; it is necessary that the deed be duly recorded in the proper record, and properly indexed, the index being an essential part of the record.

*Appeal from Superior Court, Clallam County.*

Action by J. R. Griffiths and Edward Metcalfe against William Ritchie for the possession of certain land in Port Angeles, Clallam county, State of Washington. The court made the following finding of facts and conclusions of law: *First:* That the deed from Norman R. Smith to Nellie Meagher, dated September 30, 1881, under which plaintiff's claim was filed for record and recorded on the 10th day of October, 1881, in book F of the records of deeds in the office of the auditor of Clallam county, Washington Territory. *Second:* That the said deed was not indexed in the general index for deeds kept by the auditor. As a conclusion of law from the foregoing, the court finds that the defendant, as a subsequent purchaser from Norman R. Smith, is charged with notice of said deed, and that the plaintiffs are the owners in fee and entitled to judgment for the land claimed in their complaint, for the possession of the same, etc. Judgment was given for plaintiffs, and defendant appealed.

*Bush & Noyes,* for appellant.

*Johnson & Moody,* for appellees.

The opinion of the court was delivered by

DUNBAR, J.—The first question to be decided in the consideration of this case is, does a grantee who deposits his deed for record in the auditor's office, where it is received

by that officer, discharge his duty of notice to the public, so that his title can not be prejudiced through the fault or negligence of the auditor in not recording said deed in accordance with the requirements of the registry laws? If it is concluded that he does so discharge his duty, and that constructive notice is thus given, it will be conclusive of this case; and it will not be necessary to enter into the question of whether or not the index is an essential part of the record. It will be seen that important questions arise here affecting valuable rights, and that, whichever way they are decided, a hardship will be imposed upon an innocent party. In one instance, the first grantee relies on the officer, who is a creature of the law, to do his duty; and in the other, the purchaser, reposing faith and confidence in the correctness of the record, acts upon it. Shall the deed prevail, or the record of it? On the first question there is a somewhat perplexing conflict of authority. Some courts holding that a deed is recorded in contemplation of law, when it is entitled to registration, and is deposited with the recorder in his office for that purpose; and if, through any fraud, or neglect, or mistake of the recording officer, the proper notice is not conveyed to a subsequent purchaser or incumbrancer, that the misfortune will fall upon the subsequent purchaser. While other courts hold the opposite doctrine, that the *onus* is on the grantee who deposits his deed with the recorder, to see that every step is taken, and every act done, that is prescribed by the registry laws. For collated authorities on this question, see *Mangold v. Barlow*, 61 Miss. 593, 48 Am. Rep. 84; and Wade, Notice, pp. 70–3. In many of the cases, however, that are cited as holding the doctrine claimed by plaintiff, the courts, on a careful investigation, are found to have based their opinions on statutes materially different from ours; and others on the peculiar circumstances of the case.

The enunciation by the supreme court of the United States, in *Lytle v. Arkansas*, 9 How. 314, that " it is a well

established fact, that where an individual in the prosecution of a right does everything which the law requires him to do, and he fails to obtain his right, by the misconduct or neglect of a public officer, the law will protect him," has been largely relied upon by the plaintiff, and has been quoted by a majority of the cases reported, that hold the plaintiff's view; but in none of these cases, that we have seen, have the circumstances of that case, which called forth the opinion, been reported. To get the full scope and meaning of this expression, we must not regard it as a segregated proposition, independent of the case under consideration, and applicable to all cases. For judges in rendering opinions use expressions with reference to the application of principles involved in the case under consideration; and the language employed must be construed, and its meaning gathered from an examination of the questions involved, the circumstances surrounding, and the argument that leads up to the utterance; or, in homely phrase, it is necessary to know what the court was talking about. Of course, there are certain underlying or basic principles of law, from the true deductions of which are constructed legal maxims which may be stated as independent propositions and which will admit of no modification; but the examination of the case cited shows that the quoted utterance of the eminent judge has no application to the principles involved in, and the circumstances surrounding this case. That was a case where a preëmption claimant tried through a succession of years to obtain title to some fractional subdivisions of land, and was prevented, not by any negligence of the register and receiver in the land office, but on account of their construction of the law and circular instructions from the general land office. Afterwards, by act of congress granting a thousand acres of land to the state of Arkansas for the purpose of building a court house, the governor selected and sold the land in controversy to one Russell, under whom

the defendants held. Of course many interesting questions were raised during the trial of this case, but the particular circumstances of the case which called out the quoted utterance, and the intended application of the principles therein enunciated, can probably be gathered from the balance of the paragraph following the quotation, which is as follows: "In this case the preëmptive right of Cloyes having been proved, and an offer to pay the money for the land claimed by him, under the act of 1830, nothing more could be done by him, and nothing more could be required of him under that act. And subsequently, when he paid the money to the receiver, under subsequent acts, the surveys being returned, he could do nothing more than offer to enter the fractions, which the register would not permit him to do." Thus it will be seen that none of the principles involved in the case at bar, were involved in that case; and it shows the misleading tendency of quoting detached sentences from the opinions of courts. In that case the action of Cloyes was at every step a matter of public record and of official report; and the whole circumstances of the case show that the defendants had *actual* notice of his claim; though some of them denied such a notice in the answer, while others admitted that they had heard of his claim, but believed it to be fraudulent; but the court spoke with reference to the acts of an officer acting in a judicial capacity, and deciding questions of law; decisions and acts over which the plaintiff could not possibly exercise any supervision or control. It will certainly not be hard to see that a very different rule might obtain when the act required by the applicant was purely ministerial, and which he had a right to see was done in the manner prescribed by law. It is doubtful if the judge who rendered that opinion would have concluded that the grantee *had* done everything which the law required him to do, when he contented himself with simply handing his deed to the auditor without exhibiting any further concern about it. In our judgment the scope and meaning of this

opinion has been entirely misconstrued when applied to
this character of cases. In *Mangold v. Barlow*, 61 Miss. 593;
48 Am. Rep. 84, one of the best argued cases sustaining
the doctrine that the *onus* is on the purchaser, and a case
which is also largely quoted, the court bases its opinion
on the peculiar language of the Mississippi statute, which
declares that certain instruments " shall be void as to all
creditors and subsequent purchasers for valuable consid-
eration, without notice, unless they shall be acknowledged
or proved, and lodged with the clerk of the chancery
court of the proper county to be recorded." Here the
statute seems by express terms to make the lodging of
the properly proved instrument with the clerk, the proof
of constructive notice.

And thus it is with a great majority of cases cited in
favor of plaintiff's theory. A close examination of them
will show that the opinion is based upon some express lan-
guage of the statute which would justify the conclusion
reached; but on the general proposition, however, the de-
cided weight of authority seems to be in favor of the view
that the record can be relied upon by subsequent purchasers
without actual notice; and that constructive notice cannot
be given by an *attempt* to comply with the registry laws.
And this view we think is supported by right reasoning,
and founded on principles of equity and justice. As is
most admirably stated by Mr. Jones in his work on mort-
gages: " Registry laws are intended to furnish the best and
most easily accessible evidence of the title to real estate;
to the end that those designing to purchase may be fully
informed of instruments of prior date affecting the subject
of their contemplated purchase, and also that having
availed themselves of this means of knowledge they may
rest there, and purchase in absolute security ; provided
they do so without knowledge, information, or such sug-
gestion from other facts, as would be gross negligence to
ignore, of some antecedent conveyance or equitable claim."

The recorder cannot be considered the agent of the purchaser, as is asserted by some of the authorities. It is a much fairer construction of the law, and more in harmony with the law of agency generally, to consider him the agent of the party who has the business transaction with him; who gets him to do the work; and to him he should be responsible for any damage flowing from his refusal or neglect to do the work according to the contract between them; and that contract is, either express or implied, that the instrument shall be recorded according to law. That is what the grantee pays him to do, and he must see to it that his work is done right, or accept the consequences as between himself and third parties who are misled. It can not be said that the purchaser is alone subject to damages from the non-recording of the instrument; the very object in having it recorded is to give constructive notice to innocent purchasers, and to protect the grantee's title against said purchasers. The law imposes upon him the duty of having his deed recorded. It is not the *attempt* to record a deed that the law requires, but it is the *recording* of the deed. It would be an empty benefit, indeed, that would accrue to the buying public if the attempt to record were held to take the place of the record. The obligation rests upon the grantee to give the notice required by the law. He controls the deed; he can put it on record or not, as he pleases. He has the right and the opportunity to see that the work is done as he directs it to be done—in legal manner; no one else has this opportunity, and, if from any cause he fails to give the notice required by law, the consequences must fall on him. It may be a hardship, but where one of two innocent persons must suffer, the rule is that the misfortune must rest on the person in whose business and under whose control it happened, and who had it in his power to avert it. Any other rule would be abhorrent to our natural ideas of right, and would render perilous every business enterprise.

The fact that the recorder gives to the grantee a certificate that the deed is properly recorded does not relieve him of the responsibility of seeing that it is actually so recorded. The certificate binds no one but the recorder, and cannot possibly, under any known rule of law or ethics, affect the rights of an innocent purchaser who cannot be bound by a transaction to which he is in no sense a party, of which he has no knowledge, and for which he is in no way responsible. As we before intimated, it might aid the grantee in recovering damages from the auditor, but could do no more than that.

The record is the essence of the law; the recorder is only a convenient instrument for the use of those whose duty it is to make the record. If, under the law, a public record were kept where every grantee was required to come and record his deed, he could certainly not plead his own mistakes or negligence, and the only reason why every man is not allowed to record his own instruments is simply that the record may be kept in a legible, orderly and presentable manner; and the law provides one man to do the work for the many, or, in other words, makes the one man the agent of the many, and who does the work at their instance and under their pay and control. It is true that in another department of his work he may be said to be the agent of the purchaser, or searcher of the records, or the law also makes him the custodian of the record books. Every man has a right to see the records and the law, for the purpose of preserving the records and assisting the searcher of the records, constitute the recorder their keeper, who, at certain hours for by the law's reasonable, must exhibit them to all who wish to see them, and must also certify to what the record shows, when requested so to do and paid for said services; and if, in the exercise of either of these duties, either in misrepresenting the books by exhibiting or blind records, or in making a false certificate, through fraud or negligence, the

person for whom the service was rendered must suffer the damage if any flow from the negligent or fraudulent act, and his only remedy is against the recorder for damages. A. employed the recorder to search the records, and the recorder certified to A. that the record title to a certain tract of land stopped with and rested in B.; upon the strength of which A. purchased of B., for a valuable consideration, said land, and it afterwards eventuated that C. had a good deed on record for the same land, which the recorder overlooked; no well regulated court would, we think, hold that the title of C. would be jeopardized by the mistaken certificate of the recorder. We cannot conceive how the inconsistency or injustice would be diminished by holding that the innocent purchaser did not have a right to rely on the true record, or that the grantee would be protected by the false or mistaken certificate of the recorder.

With this view of the case it becomes necessary to investigate the next question involved, viz: Is the index an essential part of the record, under the registration laws of this state? On this proposition also there is conflict of authority, though the conflict in many cases is more seeming than real, for, as with the first question discussed, a great many of the decisions which are cited as in point on the abstract principle, prove, upon close investigation, to have been decided upon statutory provisions differing materially from ours. And as constructive notice by means of recorded instruments depends wholly upon statutory provisions, we will first examine the statute in force at that time. The statutes in force at the time of the alleged constructive notice will be found in the Session Laws of 1869, on pages 313, 314 and 315, and the sections to be construed in this case are as follows:

"Sec. 18. The auditor of each county in this territory shall record in a fair and legible hand-writing, in books to be by him provided for that purpose, at the expense of the county, all deeds, mortgages and other instruments of writing required by law to be recorded which shall be

presented to him for that purpose, and the same shall be recorded in regular succession, according to the priority of their presentation; and if a mortgage, the precise time of the day in which the same was presented shall also be recorded.

"Sec. 19.  Upon the presentation of any deed or other instrument of writing for record, the auditor shall endorse thereon the date of its presentation,    .   .   .    and when such deed or other instrument of writing shall be recorded, the recorder shall endorse thereon the time when recorded, and the number or letter, and page or pages of the book in which the same is recorded."

Sec. 20 prescribes the penalty for failing to record when fees are tendered.

Sec. 21 provides for keeping a seal and making copies of records.

Sec. 22 directs the turning over the records to successor in office.

"Sec. 23.  Each auditor shall, upon the written demand of any person, make out a statement in writing, certified under his hand and the seal of his office, of all mortgages, liens and incumbrances of any kind of record in his office, upon any real or personal property in relation to which the demand shall be made; and if said statement shall be incorrect, he and the sureties upon his official bond shall be liable to the person aggrieved for all damages sustained by him in consequence of such incorrect statement, to be recovered in a civil action.

"Sec. 24.  Each county auditor shall keep a general index, direct and inverted.  The index direct shall be divided into seven columns with heads to the respective columns as follows:

| Time of reception. | Grantor. | Grantee. | Nature of instrument. | Volume and page where recorded. | Remarks. | Description of property. |
|---|---|---|---|---|---|---|
| | | | | | | |

" He shall correctly enter in such index every instrument concerning or affecting real estate, the names of the grantors being in alphabetical order.  The inverted index shall be divided into seven columns, precisely similar, only that the names of the grantees shall be alphabetically arranged, and occupy the second column.

" Sec. 25. Whenever any mortgage, bond, lien or instrument incumbering real estate, has been satisfied, released or discharged from record, whether by written release across the record, or upon the margin thereof, or by the recording of an instrument of release, or acknowledgment of satisfaction, the auditor shall immediately note in both the indices in the column headed remarks, opposite to the appropriate entry, that such instrument, lien or incumbrance, has been satisfied." . . .

These different sections were not only all passed at the same session of the legislature, but are all incorporated in one act, and must therefore be construed together, and construing them as a whole, we conclude that §§ 18, 19 and 24 intended to provide a system for the registration of deeds and other instruments affecting real estate, the compliance with which would be constructive notice to strangers. The act points out several successive steps to be taken by the auditor when the instrument comes into his possession, before his duty with reference to it is accomplished. 1st. He must file it for record, noting the time when it was presented for record. 2d. Record it in a fair, legible hand, in a book provided by the county for that purpose. 3d. Correctly enter it into an index book, provided for that purpose, showing the time of reception, name of the grantor and grantee, nature of the instrument, volume and page where recorded, and description of the property. And all three of these successive steps must be taken before the record is complete. The other sections, which we have quoted, are simply directory to the auditor, or affect simply the auditor and the person with whom he is dealing; but the three requirements specified above are for the direct and only purpose of giving notice to the public. They are vital provisions, essential to constitute constructive notice.

The appellees' counsel cite § 4 of the act of November 9, 1877 (Laws 1877, p. 312), which is as follows: " All deeds and mortgages shall be recorded in the office of the

county auditor of the county where the land is situated, and shall be valid as against *bona fide* purchasers, from the date of their filing or recording in said office, and when so filed or recorded shall be notice to all the world," and argue from that that legal notice is given simply by *filing* the deed with the county auditor, and that no other notice is necessary. If that view could be entertained, it would practically render the provision in regard to recording a nullity, for the notice would be complete when the instrument was filed, and no man would go to the unnecessary expense of recording; and the record would soon become a voluminous and unapproachable mass of loose papers. There was evidently no such contemplation by the statutes. The auditor has twenty days within which to record the deed, after it is filed; and it is the evident meaning of the law, that it would be notice, by virtue of the filing, only during the *interim* of twenty days, at the expiration of which time, it is presumed to be recorded, and the deed can be withdrawn when the record becomes the notice. Or, as is more elegantly stated by Judge DILLON in *Barney v. McCarty*, 15 Iowa, 510; 83 Am. Dec. 427, in construing a similar statute: "As the filing is but one step in a series of steps, this language presupposes, and is, in fact, based upon the assumption that the other, and in the order of time, the subsequent requirements of the law, will be observed." The Iowa statute was substantially as ours, except that the recorder was required to keep a "fair book" in which he entered every deed, giving date, parties and description of land, in addition to an index with about the same requirements as ours. So that there was really more chance for an innocent purchaser to be put on his guard, under their registration laws, in the absence of the index, than under ours. And yet the supreme court of that state has uniformly held, that the index was necessary to give constructive notice.

We are strengthened in our opinion that the index is an

essential part of the record, necessary to give notice, by the provisions of § 25, which require that the satisfaction of instruments affecting real estate shall be noted in the index. The legislature, recognizing the importance of the index, and the universal custom of depending upon the index in searching the record, required that every step taken, both as to conveying, incumbering and releasing real estate, should be made to appear briefly on the index.

It is asserted by plaintiffs " that the general construction placed upon statutes similar to ours is, that the index constitutes no part of the record; and that a grantee cannot suffer from any error or omission in it," and in defense of this proposition cites *Musgrove v. Bonser*, 5 Or. 313; 20 Am. Rep. 737; *Bishop v. Schneider*, 46 Mo. 472; 2 Am. Rep. 533; *Chatham v. Bradford*, 50 Ga. 327; 15 Am. Rep. 692; *Curtis v. Lyman*, 24 Vt. 338; 58 Am. Dec. 174; and 1 Devlin on Deeds, §§ 695-7.

In the first case cited (*Musgrove v. Bonser*), the court decided (1) that a deed, which had been acknowledged in Washington Territory by an officer, other than a commissioner of deeds for Oregon, where the deed did not have the certificate of a certifying officer of a court of record under seal, that the acknowledging officer was such officer as he represented himself to be at the time of said acknowledgment, was not entitled to record under the statute, and, therefore, did not give notice; (2) that the recording acts of Oregon only protect persons who act in good faith; and (3) cited a case of *Hastings v. Cutler*, 4 Fost. 481, holding that where a defective deed has been recorded, while it did not operate as constructive notice of the conveyance, it might operate as actual notice, and the court in the case above cited said : "But if by means of that registration of the defective deed, the defendants had actual notice of the plaintiff's title, they are charged with the notice as in other cases. The defendants, when they found the copy of the plaintiff's deed on record, must have

understood that the intended record was to give information that such a deed had been made, and that plaintiff claimed the land under it. This must be regarded as actual notice, such as every reasonable and honest man would feel bound to act upon." There is no suggestion of an index in the case; but it is plain that on the other proposition, which we have already considered, the plaintiffs' case does not fall within the reason upon which this conclusion is based. In that case, it might be urged, with some degree of justice, that there was enough revealed by the record to put the purchaser on his guard; and once being notified of the conveyance, it would be his duty to investigate; and if, from such investigation, the will of the grantor could be gathered he would not be an innocent purchaser if he purchased contrary to such revealed will. But in the case at bar the very instrument by which this notice is given is wanting, and the avenues of knowledge are closed up. In *Bishop v. Schneider* the court holds that the index is no part of the record, asserting that the proper office of the index is what its name imports, to point out the record, that "the grantee has no control over the official acts of the recorder, and when he delivers his deed to the officer he has performed all the duty within his power." But the court states that this decision is based alone on the construction of the statutes of that state, and they are materially different from ours, both with regard to the definiteness of the index concerning deeds, and the absence of the requirements to note the satisfaction of mortgages, and other instruments affecting real estate, in the index. Altogether their statute does not make the index so important a part of the system of registration as ours does. Their statute also provides that when an instrument is filed with the recorder, it shall be considered as recorded from the time it is delivered. The opinion in this case quotes approvingly the case of *Sawyer v. Adams*, 8 Vt. 172; 30 Am. Dec. 459. There the town

clerk copied a deed, delivered to him for record, on a book which had ceased to be a book for recording for a number of years; and for the purpose of concealment and fraud, did not insert the names in the index or alphabet. It was held that the deed was not recorded, and was not notice to after purchasers. This is endorsed by the Missouri case on account of the fraud that was perpetrated. But it seems to us that it makes little difference, so far as the equities of the innocent purchasers are concerned, whether the obscurity of the record was the result of fraud or negligence on the part of the recorder. Certainly there is no logical basis for such a discrimination. The rights of the purchaser must depend upon something more tangible and more easily ascertained than the motive of the officer. Evidently the idea upon which the decision in this case was based was, that the searcher of title had been misled by the state of the record. But, as a practical fact, he would have been no more liable to have been misled by reason of the deed being recorded in an unused book, than if it had been recorded in the proper book and not indexed. The recording in the unused book was an unnecessary act of caution on the part of the recorder in his attempt to deceive. In *Chatham v. Bradford*, 50 Ga. 327; 15 Am. Rep. 692, while the court to a certain extent argues the general proposition, insisting that an index is only a means of access to the record, and that ease of access is wholly a question of degree, it says that many of the records of that state have no index, that their acts for the recording of deeds do not any of them require the clerk to keep an index, and states in conclusion that they put their decision mainly on their own statutes, and on the condition of the records and the uniform practice of that state. They also approvingly cite *Sawyer v. Adams. Curtis v. Lyman*, 24 Vt. 338; 58 Am. Dec. 174, cited by plaintiffs on this point, we have been unable to obtain; but from reference to it in other cases, we conclude that

their statute is different from ours in reference to indexing. Considering the difference in the statutes, we think that none of the cases cited are directly in point.

While it is true that Devlin, in his work on deeds, § 696, seems to imply that an index is not necessary to give constructive notice, yet he evidently bases the idea not so much on the theory that the index is not a part of the record, as from his general conclusion that the obligation of the grantee as to notice ceases when he has filed his deed for record. And he qualifies this general statement by saying, "unless the language of the statute necessarily leads to a different conclusion," a qualification it seems to us which renders meaningless the general statement; for as constructive notice is purely statutory, it must necessarily follow that it is the "language of the statute" that leads to one or the other of the conclusions. He cites *Barney v. Little*, 15 Iowa, 527, but says that "the decision in that case was founded upon the express language of the statute of that state," intimating that in consideration of the statute, the conclusion of the court was correct; and inasmuch as our statutes make the index a more important factor in the system of registration than does the Iowa statute, we may fairly conclude that under a statute like ours this learned author would consider the index an essential part of the record. Indeed, upon painstaking investigation, not only of all the cases cited by plaintiffs (except the Vermont case, above referred to), but of many others, we have been unable to find a case reported which decides that an index is not an essential part of the record, upon a statute substantially like the registry laws of.1869. It is true that in numerous cases it has been decided that where an instrument affecting realty was not indexed as required by law, that the title of the grantee should not be disturbed. The greater part of such decisions, however, will be found on examination not to be based on the theory that the index is not a part

of the record, but upon the broad principle that the recording officer is the agent of the subsequent purchaser; and that the grantee is acquitted, when he places his deed for record in the hands of the proper officer. A position which, we think, is untenable for the reasons above given. It is urged by the court in *Schell v. Stein*, 76 Pa. St. 398, 18 Am. Rep. 416, in deciding the case adversely to the interest of the purchaser, that the provision for indexing the records is of comparatively modern origin; and that such provisions did not exist in the early registry laws. This, we think, is a good argument, but the application by the learned judge was, in our judgment, bad. The law was no doubt suggested by the necessity of some such provisions, as the records accumulated, and at the present day, considering the accumulations of deeds, mortgages and liens of all kinds, affecting real estate, and the rapidity with which titles are changing every day, if we give the effect of constructive notice to the record at all, the only practical way by which the public can obtain the benefit of that notice is through the medium of the index. Laws are enacted for the benefit of the citizen, not only in theory but in practice. They are not intended as pit-falls for the feet of the unwary. The state provides in express terms for the keeping of this index, and its mandate to the auditor is to enter in said index, in alphabetical order, the names of the grantors and grantees. This law the citizen is aware of; he has a right to presume that the law has been obeyed. If there was *no* such law, and he had abundance of time, and untold patience, he might devote himself to the task of examining the vast accumulations of records page by page; but with the law in effect, and the universal custom recognized of examining the record through the index, if the instrument is not indexed the law instead of aiding and protecting the citizen becomes a delusion and a snare, and a ready vehicle for collusion and fraud. It would

be a policy worthy of the consideration of the ancient tyrant, who wrote his laws in small characters and posted them so high that his subjects could not read them, while at the same time he held them accountable for their strict observance. In this connection we cannot refrain from quoting the language of the court in *Barney v. McCarty*, " that a deed might as well be buried in the earth as in a mass of records without a clue to its whereabouts." In *Speer v. Evans*, 47 Pa. St. 141, the court says: " As a guide to enquirers, the index is an indispensable part of the recording, and without it, the record affects no party with notice." This we think is the better view of the law.

In this case there is no question of actual notice, and applying the law as we have found it to be, to the case at bar, it follows that the judgment of the lower court must be reversed. The case is remanded to the lower court with instructions to reverse the judgment.

ANDERS, C. J., and SCOTT, HOYT and STILES, JJ., concur.