[No. 537. Decided November 17, 1892.]

SYLVANUS N. SADLER, MARY E. SADLER, WILLIAM T. WORTHINGTON AND GEORGE D. BLAKE, *Appellants*, v. U. R. NIESZ AND ADA B. NIESZ, *Respondents*.

APPEAL — TIME OF FILING STATEMENT — TIME OF SETTLEMENT — COMMUNITY PROPERTY — CONVEYANCE BY HUSBAND — INNOCENT PURCHASER — ESTOPPEL — PRESUMPTION AS TO NON-EXISTENCE OF COMMUNITY.

As judgment cannot be rendered in an action at law tried by the court until the findings of the court have been filed, the filing of a statement of facts on appeal within thirty days thereafter is sufficient, although the findings may have been signed more than thirty days prior thereto.

Where proper notice of the settlement of a statement of facts has been given for a certain day, and no amendments are proposed by the respondent, the failure of the judge to settle the statement on the day named does not deprive him of jurisdiction to settle the same upon a later day.

A conveyance by a husband alone of community property, the legal title to which is in himself, is not void, but voidable only; and where he has held himself out to the public for a number of years as an unmarried man, and his wife has lived in a distant part of the country separate from him, asserting none of her rights as his wife, and unknown to the community where he dwelt, they are estopped from setting aside the husband's deed, provided the grantee has made a reasonable effort to ascertain whether his grantor is a married man or not. (Per STILES, J., and ANDERS, C. J.)

A spouse in whose name community property is standing cannot dispose of the same without the other spouse joining in the conveyance, regardless of the fact as to whether or not they are living together. (Per HOYT, J.)

If either spouse sees fit to allow the other to act and represent himself or herself as a single person, under such circumstances and for such a time as would induce persons of reasonable prudence to believe that such spouse is in fact a single person, then the community has no existence so far as the public, having no knowledge of the legal relation of husband and wife, are concerned, and neither the community, nor either member thereof, can assert its existence

to the detriment of those dealing with such spouse as a single person. (Per Hoyt, J.)

Where a wife by her own conduct has enabled her husband to hold himself out to the world as an unmarried man, she is estopped from setting up a community interest in lands sold by him to an innocent purchaser. (Per Scott and Dunbar, JJ.)

*Appeal from Superior Court, Kitsap County.*

*George D. Blake,* for appellants:

Land acquired in this state since 1879 by a married man or woman or both is, presumptively at least, community property, no matter where one or both of the spouses reside. *Saul v. His Creditors,* 5 Mart. (N. S.) 569; *Gratton v. Weber,* 47 Fed. Rep. 852; 1 Wash. Real Prop. (5th ed.), pp. 198, 199; Story, Conflict of Laws (8th ed.), §§ 144, 190; *Holyoke v. Jackson,* 3 Wash. T. 238; *Cole's Widow v. His Executors,* 7 Mart. (N. S.) 41; *Routh v. Routh,* 57 Tex. 589; *De Godey v. Godey,* 39 Cal. 157; *Reel v. Elder,* 62 Pa. St. 308; *Lakin v. Lakin,* 2 Allen, 45; *Pitts v. Pitts,* 52 N. Y. 593; 2 Devlin on Deeds, § 874.

A void instrument, though under seal, does not work an estoppel at law or in equity. Bigelow on Estoppel (5th ed.), p. 349, and cases cited; 3 Wash. Real Prop. (5th ed.) p. 116; 2 Devlin on Deeds, § 1275; *Bank of America v. Banks,* 101 U. S. 240; *Poole v. Gerrard,* 6 Cal. 71; *Dickinson v. McLane,* 57 N. H. 31; *Howell v. McCrie,* 14 Pac. Rep. 257; *Duncan v. Moore,* 7 South. Rep. 221; *Abell v. Lothrop,* 47 Vt. 380; *Doe v. Ford,* 3 Ad. & E. 649; *Den v. Chaffin,* 3 Dev. (N. C.) 108; *Keen v. Coleman,* 39 Pa. St. 299; *Cook v. Walling,* 117 Ind. 9. Mrs. Sadler, not being able by her own individual deed to convey any interest in said land, could not be estopped from claiming it by reason of anything else she might say or do. *Lowell v. Daniels,* 2 Gray, 168; *Showers v. Robinson,* 43 Mich. 513; *Innis v. Templeton,* 95 Pa. St. 262; 2 Herman on Estoppel, § 967; *Howell v. McCrie,* 14 Pac. Rep. 257.

*Ronald & Piles*, for respondents:

Where community property has been conveyed without the wife joining in the deed, she alone can maintain an action to set such deed aside. *Hair v. Wood*, 58 Tex. 77; *Cranmer v. Porter*, 41 Cal. 465; *Bennett v. Mattingly*, 110 Ind. 197; *Crooks v. Kennett*, 12 N. E. Rep. 715; *Terrill v. Auchauer*, 14 Ohio St. 80.

No instrument conveying property is void, unless the statute absolutely provides that the conveyance shall be null and void when made in contravention of the statute. *Bennett v. Mattingly*, 110 Ind. 197; *Terrill v. Auchauer*, 14 Ohio St. 80; *Beecher v. Marquette, etc., Mill Co.*, 45 Mich. 103; *State v. Richmond*, 26 N. H. 232; *Deming v. State*, 23 Ind. 420.

The land in question is not community estate. The community system was enacted for the benefit of those husbands and wives who reside and acquire property in this state and for no others, especially so where the rights of innocent third parties have intervened. *Huff v. Borland*, 6 La. An. 436; *Wolfe v. Gilmer*, 7 La. An. 583; *Leech v. Guild*, 15 La. An. 349; *Dye v. Dye*, 11 Cal. 168; *Dow v. Gould, etc., Co.*, 31 Cal. 652; *Conner v. Elliott*, 18 How. 591; *Kraemer v. Kraemer*, 52 Cal. 302.

A *bona fide* purchaser of real estate for a valuable consideration buys it free from equities of which he had no notice. *Wells v. Neff*, 12 Pac. Rep. 84; *Pouncey v. May*, 13 S. W. Rep. 383; *Whelchel v. Lucky*, 41 Fed. Rep. 114; *Parker v. Coop*, 60 Tex. 111; *Edwards v. Brown*, 4 S. W. Rep. 380; *Hill v. Moore*, 62 Tex. 610; *Patty v. Middleton*, 17 S. W. Rep. 909.

The appellants are estopped to assert any title to the land in question. Married women may be estopped by their deliberate conduct as well as anyone else. *Norton v. Nichols*, 35 Mich. 148; *Reed v. Morton*, 40 N. W. Rep.

282; *Bodine v. Killeen,* 53 N. Y. 93; *Godfrey v. Thornton,* 46 Wis. 679; *Sexton v. Wheaton,* 8 Wheat. 239; *Parker v. Coop,* 60 Tex. 111; *Storrs v. Barker,* 6 Johns. Ch. 166; *Wooters v. Feeny,* 12 La. An. 449; *Lunt v. Neeley,* 24 N. W. Rep. 739.

The opinion of the court was delivered by

STILES, J.—This case was tried as an action at law by the court without a jury.    The findings of fact and conclusions of law made by the court, as well as the exceptions to the findings taken by both sides, would appear from notes made upon the papers to have been prepared July 15, 1891, but none of them seem to have been filed with the clerk until August 10, of the same year, and the clerk so certifies. In an action at law tried by the court no judgment can be rendered until the findings have been filed. Code Proc., § 379.    Therefore, in this case no judgment was rendered until August 10.    This makes the filing of the statement of facts on or before September 3 in time.

The notice of the settlement of the statement was given September 3 for September 17, and no amendments were proposed by the respondent.    There was difficulty in procuring the judge's certificate on the day named because of his absence from the county wherein the cause was tried, but he subsequently, on the 26th day of September, after notice to the respondent, certified the statement as correct. For the reasons given in *Cogswell v. West Street and North End Electric Railway Company, ante,* p. 46, we hold that the judge did not lose jurisdiction to make the certificate. The motion to strike is denied.

It is also moved to dismiss the appeal: (1) Because of the insufficiency of the notice, but the objection is simply to the unnecessary fullness of the notice, which cannot be regarded; (2) because the appeal was not taken within six months from the date of judgment, but it was taken within

six months from August 10, and therefore was in time; (3) because the service of the notice of appeal was made before the notice was filed in the clerk's office, but this is precisely what the Code of Procedure, § 1405, seems to contemplate; and (4) because no motion for a new trial was made, but if it should be held that a motion for a new trial was a necessary prerequisite to the examination of matters occurring at the trial in this court the want of such a motion is not ground for dismissal of an appeal. The motion to dismiss is, therefore, also denied.

Sylvester N. Sadler and Mary E. Sadler were married in the State of Pennsylvania in 1863, and lived together as husband and wife for about eight years, at the end of which time Sadler, who was a seafaring man, left his wife and family and came to the Pacific coast. About 1873 he took up his residence in Kitsap county, and has resided there ever since. His wife and family remained in the east, unknown to any of his associates and acquaintances in the west. Sadler represented himself to his friends and neighbors and to purchasers of the real estate involved in this action, as well as purchasers of other land which he acquired, as a widower whose wife had died a number of years ago, and his statements were generally believed and frequently acted upon. In 1883-4, he acquired the lands which are the subject of this action in part by purchase deeds from private individuals, and in part by preëmption patent from the United States. Subsequently he sold and conveyed this land to the respondent, U. R. Niesz, or his grantors, by numerous deeds, in the body of some of which he stated that he was an unmarried man, and in others, by representations to the officers who took his acknowledgments, he caused them to recite in their acknowledgments that he was unmarried. Niesz paid a large consideration for these lands, a considerable portion of which went directly to Sadler, and his conveyances were taken without

any notice or suspicion that Sadler had a wife living, or
that his statements as to his condition were not true.    In
1889, some time after the last tract was acquired by Niesz,
Mary E. Sadler appeared in the state, saw Niesz, told him
that she was Sadler's wife, and asserted her right to an
interest in the land, but offered to relinquish all her claim
if she were paid the sum of five thousand dollars.    This
was the first notice that Niesz had of her existence, with
the exception that about August, 1889, he heard a rumor
that there was a woman who claimed to be Mrs. Sadler.
Upon her coming to Washington, Mrs. Sadler took up her
residence with her husband and lived with him for about
three months, but after that time and for a year previous
to the trial of the cause they had lived apart, he in Seattle
and she in Kitsap county.    Upon Niesz's refusal to
recognize her claim or to pay her any money for its re-
linquishment, this suit was brought by the Sadlers and
Worthington and Blake, who were their grantees under
deeds made since Mrs. Sadler's arrival in the state, and
therefore subsequent to the conveyances to Niesz.

Considering these facts, which were admitted over the
strenuous objection of the respondents, the complaint in
the case was peculiar.    The plaintiffs are named simply as
Sylvanus N. Sadler, Mary E. Sadler, William Worthington
and George D. Blake, and its only allegations are that the
plaintiffs are seized in fee simple as tenants in common of
the property (describing it); that they are entitled to the
possession of said land; and that defendants are in posses-
sion and unlawfully withhold the same from them, these
allegations being barely sufficient to support a naked ac-
tion of ejectment based upon a purely legal title.    No al-
legation whatever was made of the marital relation existing
between Sadler and his wife at the time he acquired this
land, the pleader assuming that the various deeds made by
Sadler were absolutely void, and that under the allegations

of the complaint proof of the marriage relation between the Sadlers could be made to show the legal title in Mrs. Sadler as well as her husband.

The appellants urge numerous objections to the findings of the court on the ground that they were not justified by the evidence, and it may be conceded that some of the minor and unimportant facts were not sustained by any evidence, but we find that all of the material ones were sustained by some evidence, and, although the testimony on these points may have been weak or contradictory, we are required by the statute to treat them as a special verdict of the jury, which is not to be disturbed for such reasons. The main question of the case is, whether the judgment is sustainable upon any conclusion of law deducible from the facts found, and we shall confine the discussion to that point. The court below found that Sadler was estopped by his representations and warranties; that Mrs. Sadler was estopped by her remaining away from the territory, whereby knowledge of her relation to her husband by people who were likely to deal with him was suppressed, and by her silence when she might have let it be known in the community where Sadler resided that he was a married man; and that Blake and Worthington received their pretended deeds after the estoppel, and with knowledge of the rights of Niesz.

The several members of this court are unanimous that the judgment rendered by the court below should be affirmed; but a constitutional majority are unable to agree upon any one ground which should be assigned to sustain it. We, therefore, order the affirmance and proceed to give our several reasons for the action taken.

Appellants maintain that there is no estoppel against an attack upon a void instrument even by the man who executed it, and that, therefore, the court erred in its conclusion. They lay it down that the legal title to community

real property is in both husband and wife, or that more correctly speaking it is in the community, which is composed of the husband and wife, and that until the community acted there was no deed but merely a void paper. The supreme court of the territory, in *Holyoke v. Jackson*, 3 Wash. T. 235 (3 Pac. Rep. 841), certainly gave countenance to this proposition, in its analysis of the act of 1879. Whether that decision was influenced to any extent by the decisions in other states or not I am unable to say, as none are cited; but it is true that at least one case, *Zimpelman v. Robb*, 53 Tex. 274, is found to fully support the substance of the theory that the title to community real estate is equal in husband and wife, for the court there said:

"Under the law as now settled by the former decisions of this court, the *titles* of the husband and wife to the community property are equal, the only difference being, that during the continuance of the marriage relation, the husband, as the head of the family, has the management, control and disposition of the property for their joint benefit."

But *Zimpelman v. Robb* is not now sustained by the supreme court of Texas. *Edwards v. Brown*, 68 Tex. 329 (4 S. W. Rep. 380), held that the legal title of the land conveyed to either husband or wife was in that one to whom the conveyance ran, although *beneficially* the property belonged to both; and that the beneficial interest of the other spouse was an equitable interest only. *Zimpelman v. Robb* is disposed of with the remark that if it had not appeared that the purchasers from the husband had knowledge that he was a married man, and were therefore bound to take notice of a conveyance from his wife, a different case would have been presented, and a different ruling called for. Other Texas cases to the same import have followed *Edwards v. Brown*, all of which are noted in the latest case from there, which is *Patty v. Middleton*, 82 Tex. 586 (17 S. W. Rep. 910). This case enters more

formally into a discussion of the question of title to community property than any of its predecessors, and the conclusion is arrived at again that *Edwards v. Brown* was correct, even to the extent of holding that after the death of the wife the husband could convey a good title to innocent purchasers without knowledge of his having had a wife, as against his children. To the same effect is *Wooters v. Feeny*, 12 La. An. 449, where the wife, under a statute giving the husband absolute power of disposition of community real estate, sold land the title to which was conveyed to her.

I find in *Holyoke v. Jackson, supra, Andrews v. Andrews,* 3 Wash. T. 286 (14 Pac. Rep. 68), and *Hoover v. Chambers,* 3 Wash. T. 26 (13 Pac. Rep. 547), the element of knowledge on the part of the person contracting with the husband present in each case, which was sufficient to sustain the decisions made, under our statute prohibiting the husband alone to convey. But when I regard our act of 1881 merely as a statute, without attempting to make philosophical distinctions, the theory of a joint or community ownership of the title is not supported. Nowhere in this act, or in any law ever passed in the territory on the subject, is there any attempt to define or constitute a "community" or to declare of whom or what it shall consist, or what its rights or liabilities are; with the single exception of its use with the word "debts" the word community is everywhere employed merely as an adjective to qualify "property," just as the word "separate" is employed to qualify other property. Previous to 1879 the word "common" was used where now we have the word of four syllables. Now this act (Code of 1881, § 2409) says that property "*acquired*" after marriage by either husband *or* wife *or* both, is community property. There is no recognition in this language of a "community" which can "acquire;" not even when both husband and

wife "acquire." In *Edwards v. Brown, supra*, it was said on this point:

"In passing that act, the legislature did not have under consideration the form of the conveyance, and upon that subject no provision is there made. If it had provided that all property conveyed to either husband or wife during marriage should *belong to the common estate*, this would have placed the legal title in both. But no such language is used. Such, in fact, is not the meaning or effect of the section."

In some of the states there are statutory, and in others constitutional, provisions forbidding the husband to sell the homestead without the joinder of the wife, but such provisions have never been considered to make a partnership, a corporation or an "entity" of the husband and wife, or to vest the title otherwise than in the one to whom it was conveyed.

Our own legislature in 1891 put an inferential construction upon this question of legal title, by the act of March 9th, as follows:

"SECTION 1. Whenever any person, married or single, having in his or her name the *legal title* of record to any real estate, shall sell or dispose of the same to any actual *bona fide* purchaser, a deed of such real estate from the person holding such legal record title to such actual *bona fide* purchaser shall be sufficient to convey to, and vest in, such purchaser, the full *legal and equitable* title to such real estate free and clear of any and all claims of any and all persons whatsoever, not appearing of record in the auditor's office of the county in which such real estate is situated.

"SEC. 2. A husband or wife having an interest in real estate, by virtue of the marriage relation, the *legal title* of record to which real estate is or shall be *held by the other*, may protect such interest," etc.

This was no declaration that the legal title should be taken to be in the person to whom the conveyance ran, but

a recognition of the fact that legal title existed in the grantee named in the conveyance, and that every interest existing or claimed by any other person, whether husband, wife, *cestui que trust*, or what not, was an equitable interest, as all courts have held it to be under all forms of statutory or common law.

Our system of conveyancing and recording would furnish an additional strong train of argument in favor of holding the deed of the holder of the record title to real estate to an innocent purchaser without notice good as against all claimants, for the purpose of that system is to render safe and certain every investment made in land in this state by one who pays due heed to the public records, and has no actual notice of antecedent conveyances or equitable claims. *Ritchie v. Griffiths*, 1 Wash. 433 (25 Pac. Rep. 341).

This statute, as I take it, was enacted for the purpose of enabling the wife to protect herself against reckless, improvident or fraudulent sales by the husband. It prohibits *all* sales made by him alone, but no penalty is attached, and no declaration is made that his sole deed shall be invalid or void. He is simply prohibited, and doubtless, as between him and her and every person taking his deed, while fairly chargeable with notice of his married condition, she would be entitled to relief. But is it to be adjudged that it was the intention of this law that under all circumstances a purchaser in good faith from the husband, or the wife either, if the legal title should be in her, is the warrantor of his own title, and must lose everything on the hazard that his grantor is not a married person? Is it to be sustained, *in equity*, as a cover for frauds and swindlers who must, in the nature of things, be either men or women capable of being married? Can this husband, with the lie that he is unmarried on his lips, and the money of Niesz in his pocket, turn around and sue to recover the land which he sold? Can the woman who has such a husband maintain

that every consideration is subordinate to her rights, and in such a suit, not only protect herself, but take away from a purchaser who had been purposely thrown off his guard as to her existence, the property which under all other circumstances would be decreed to be his? Surely not, unless there be some imperative reason therefor.

There are a great many decisions of courts which loosely pronounce such conveyances "void" or "absolutely void," and we have been cited to some of them. But an inspection of them almost invariably shows that "voidable" was what was meant. Even when a statute expressly declares a prohibited act void, which this one does not, it may be only voidable. In *Terrill v. Auchauer*, 14 Ohio St. 80, the statute pronounced a purchase made by an appraiser of mortgaged property prior to a sheriff's sale "fraudulent and void;" but, after consideration of abundant authority, it was held that such a sale was voidable merely, on the ground that the provision of the statute was obviously introduced for the benefit of the parties to be affected by the sale only. In *Van Shaack v. Robbins*, 36 Iowa, 201, the statute declared that if fraud in selling land for taxes should be established, the sale and title should be void; held, that such a title in the hands of an innocent purchaser would be protected. See Endlich on Statutes, §§ 269, 270; *Bennett v. Mattingly*, 110 Ind. 197 (10 N. E. Rep. 299 ).

Several of the decisions of this court are cited by appellants, but they are not in point. *Littell & Smythe Mfg. Co. v. Miller*, 3 Wash. 480 (28 Pac. Rep. 1085), held that a husband's interest in community property could not be sold to satisfy a mechanic's lien, the holder of which knowing of the existence of Mrs. Miller, was hardly an innocent purchaser. *Ryan v. Fergusson*, 3 Wash. 356 (28 Pac. Rep. 910), held that the entire estate in community realty must be sold to pay debts, on the decease of husband or wife,

and that it was so intended where the administrator's deed mentioned only the interest of the deceased. In *Brotton v. Langert*, 1 Wash. 73 (23 Pac. Rep. 688), Langert was a judgment creditor, not a purchaser either innocently or otherwise, no sale had been made, and the wife was herself the plaintiff.

Holding, therefore, as this examination of the statutes and the better authorities impel us, that the interest of Mrs. Sadler was an equitable and not a legal interest; that Sadler's deed was not void, but voidable only; and that the doctrine of estoppel was free to operate against, and justly applicable to all of the appellants, I can only vote to affirm the judgment of the court below.

The law is careful of the innocent purchaser, and neither the letter nor the spirit of the act in question calls upon us to overturn the ordinary rules of common honesty which a regard for him has built up, in order to declare void a conveyance which the statute does not so denounce. It is the duty of the undivorced husband and wife to live together; the law contemplates that they will do so; and the business community, all of whom may be sought as purchasers of real property, have a right to expect that they will not place themselves so widely apart as that common reputation will report them unmarried. On the other hand, I think it must be conceded that a large measure of responsibility is thrown by our statutes upon the purchaser in the way of making inquiry as to the condition of his grantor, which a mere examination of the public records would not satisfy; but a reasonable effort in the direction of inquiry under all the circumstances must be taken as sufficient, else no title can be safe. The respondent in this case fully satisfied the requirement of the law in this respect, and I, therefore, coincide with the superior court on this ground also.

ANDERS, C. J., concurs.

SCOTT, J. — I concur in the result, because I think the wife is estopped under the peculiar circumstances of this case from making any claim to the land in question as against an innocent purchaser; and the other appellants, by their direct acts and knowledge, are bound by the deeds executed by Sadler to the respondents. I also doubt whether the statute relating to the disposal of community lands by the husband should be held to apply where the wife did not become a resident of this state prior to the conveyance.

HOYT, J. (*concurring*). — In concurring in the affirmance of the judgment in this case, I desire to add only a few words to what has been said by Judge STILES in his opinion. I agree with much that has been therein stated, but I am unable to agree with that part of such opinion in which it seems to be held that the spouse in whose name community property is standing can dispose of the same without the other spouse joining in the conveyance, even although the two spouses are living together as husband and wife. To thus hold seems to me to be in direct conflict with the statute upon the subject. Such statute, after providing what property shall be community property, provides that the same shall not be conveyed excepting by the joint deed of the two spouses. Such statute was, in my opinion, passed mainly in the interest of wives and for their protection.

It was the intention of the legislature by such enactment to prevent a husband from disposing of the real estate of the community in fraud of the rights of the wife. If, however, we hold thereunder, as stated in the opinion above referred to, it seems to me that it will open the door which the legislature thus intended to close. If it is held that the husband while living with his wife can alone convey such property standing in his name to any one pur-

chasing the same in good faith, without knowledge of the existence of the wife, there will be nothing to prevent a fraudulent arrangement as between the husband and a purchaser by which it will be made to appear that such purchaser acted in good faith, when in fact he had full knowledge of all the circumstances. A designing and unscrupulous husband would thus be enabled to nullify the intention of the legislature.

If, however, it is held that when property is acquired by the husband, not by gift, devise or bequest, it at once becomes the property of the community simply by reason of the fact that he has a wife, regardless of the question as to whether or not he and his wife are living together, then the door is open to such frauds on the part of a designing husband and wife that public policy demands that some other construction of the statute should be found, if possible. Once construe the statute in this way, and it becomes possible for a husband and wife by their fraudulent acts to allow the husband to so represent himself before the community in which he resides that it will be generally believed therein that he is a single man. And, as a consequence of such belief, be enabled to convey all property standing in his name as such single man, and then by bringing the wife upon the ground and showing that during all this time they were in fact husband and wife, avoid every transfer of real estate made by him. In this way they could, by the investment of a single thousand dollars, in the course of a few years have procured the title to such a large number of pieces of real estate to have been conveyed to the husband that when the conveyances from him came to be set aside, the community would with the investment of such single thousand dollars find themselves in the possession of property worth probably hundreds of thousands.

I cannot believe that the legislature intended to provide machinery for such fraudulent transactions. I think that

in regard to the holding of property acquired in the way specified by the statute, the legislature intended to create a community as between the husband and wife for the purpose of holding such property; that in the conveyance of such property to either spouse a bare legal title therein is vested in such spouse, but that the entire beneficial interest is vested in the community, and an absolute prohibition placed upon the spouse in whose name the title chances to stand, which prevents any title whatever being passed by that spouse alone so long as the community exists.

This makes it necessary to investigate the nature of this being which we call a community under the legislation in relation thereto.    As between the two spouses such community exists whenever they occupy the relation of legal husband and wife, regardless of the fact as to whether or not they are living together.    But such relation alone does not constitute the husband and wife a community as between them and third persons who have no knowledge of the existence of such relation, or of any facts which should have put them upon inquiry as to what were the relations of the spouses or either of them.    There must, in my opinion, be such an assertion of his or her rights by each of the spouses as are ordinarily and reasonably to be expected from the fact of the existence of such relation, or else the community does not exist so far as the public having no knowledge of the legal relation of husband and wife are concerned.    If either of the spouses sees fit to allow the other spouse to act and represent him or herself as a single person, under such circumstances and for such a time as would induce persons of reasonable prudence, with whom such spouse associated, to believe that he or she was in fact a single person, then I think that so long as this state of facts exists there is no such community existing between the spouses as was contemplated by the legislation upon the subject of the conveyance of community property.

It is true that such a construction of the statute will enable an unscrupulous husband, by abandoning a wife and concealing his whereabouts, to acquire and dispose of property, in fraud of her rights, without any fault on her part. But if either a member of the community or a third person, without fault on the part of either, must suffer by reason of the acts of such community, or of either member thereof, I think that good conscience and well established rules require that it should be the member of the community. To a certain extent each member of the community must be held to be an agent of the community, and of the other member, and it could not have been the intention of the legislature to have absolutely protected the innocent member of such community against the acts of the other, and yet left innocent third persons without any protection whatever. The public have a right to demand that there should be something more than the legal relation of husband and wife before it is bound to recognize a community between the persons occupying such relation. The legal relation of husband and wife may exist and be kept a profound secret, unknown to the nearest relatives or most intimate associates of both the spouses. Such marriage relation would create a community as between the spouses, so far as their relation to each other was concerned. But so long as it was concealed from the public, it would have the right to deal with each spouse as a single person in relation to the property standing in their respective names.

In my opinion, so far as the public is concerned, such a relation cannot be held to exist without the concurrence of two facts: *First*, The marriage relation between the members of the community; and, *second*, some assertion of the rights incident to such marriage relation. Until there has been some avowal of the relation between them, the community does not exist at all so far as the public is concerned, and whenever either member of the community ceases to

assert his or her rights under the marriage relation for such a time and under such circumstances as to induce the public generally to believe that the other spouse is in fact a single person, then, as between the spouse so neglecting the assertion of his or her rights and the public, the community does not exist.

The facts in the case at bar show clearly that there has been such an omission to assert any rights by virtue of the marriage upon the part of the wife as would lead the most prudent person dealing with the husband to believe his assertion that he was in fact a single man. It follows that as to those dealing with the husband as a single person neither the community, nor either member thereof, can assert its existence to the detriment of those thus dealing with the husband.

DUNBAR, J.— I concur in the result for the first reason assigned above by Judge SCOTT. The testimony plainly proves to me that there was no actual community existing, such as is contemplated by the law, and that Mrs. Sadler by her own acts aided Sadler in perpetrating a fraud upon Niesz, and that the showing they made after the sale of living together was only a part of the scheme to defraud, and she should, therefore, be estopped from setting up her claim against an innocent purchaser; but I cannot concur in the opinion of Judges STILES and ANDERS.