[No. 712. Decided December 17, 1892.]

Oscar Nuhn and Grattan H. Wheeler, *Respondents*,
v. Charles Miller *et al.*, *Appellants*.

COMMUNITY PROPERTY — CONVEYANCE BY HUSBAND — ESTOPPEL
OF WIFE.

Where a wife, residing in a distant state, has parted from her
husband and has treated such separation as final, permitting him
to go where he pleased and do what he liked, without any effort to
follow him, during which separation he has held himself out to be a
single man, and has acquired and conveyed lands as an unmarried
man, the wife is estopped from claiming a community interest in
such lands as against an innocent purchaser.

*Appeal from Superior Court, Pierce County.*

*Taylor & McKay*, and *T. W. Hammond*, for appellants.
*Van Fossen & Ramage*, for respondents.

The opinion of the court was delivered by

Scott, J. — This was an action brought to quiet title to
certain lands in Pierce county. The defendant Charles
Miller had executed a deed some years before purporting
to convey said lands to certain parties, and the same were
deeded by them to other grantees, and finally to the plaint-
iffs. Miller had represented himself as a single man at the
time he executed the deed, but the defendant Elizabeth
Miller subsequently appeared, claiming to be his wife, and
that the lands were community lands, and that she had a
community interest therein. Whereupon the plaintiffs
brought this action.

The defendant Charles Miller originally lived at Harris-
burg, Pennsylvania, at which place, in the year 1858, he
was married to the defendant Elizabeth Miller. He was
known there by the name of Conrad Miller, his name
being Charles Conrad Miller. Six children were born

to them, all of whom were living at the time of the trial. From Harrisburg, Miller and his family moved to Pittsburg in January, 1873. In the spring of 1874, Elizabeth Miller took their children and returned to Harrisburg, Miller continuing to reside at Pittsburg until some time during 1877, when he removed to California, and remained there until 1879, when he moved to Oregon, and from there to Washington Territory, and he has resided here since the spring of 1880. The facts concerning the separation of the defendants Charles and Elizabeth Miller, or what facts led up to it, do not fully appear in the testimony. Miller says he was advised by a physician to allow his wife to return to Harrisburg, because she was homesick, and that he did so upon that account. He testified that they kept up their relations as husband and wife until 1879, although he had removed from Pennsylvania in 1877. When asked why the relations ceased at that time, he said he had been informed that she was dead, and he did not know differently until May, 1890, when he learned that it was her mother who died. It seems that no correspondence was kept up between the parties, and there is every indication that they regarded their separation as a permanent one.

In October, 1885, Miller was married in this territory to one Mary Smith, and has one child by this marriage. He was subsequently divorced from this woman, in the district court holding terms in and for Pierce county, and in February, 1888, he remarried her. She died prior to the commencement of this action.

When Miller left Pennsylvania for the State of California he took twenty-seven thousand dollars in money with him. He lost thirteen thousand dollars in California, and met with some losses thereafter. And it appears by his own testimony that none of this twenty-seven thousand dollars was invested in this land, but that he purchased the

same with money he earned after coming to Washington Territory.

·The circumstances connected with this case are somewhat remarkable. They are highly inconsistent with the claims of defendants at this time, that they never intended to abandon each other, but considered themselves husband and wife. Elizabeth always, and he, until he learned of her death, as he supposed, in 1879. There is nothing to show that Miller ever had any word from his wife or family after he left Pennsylvania, until some years after he had sold the lands in question, at which time he says he requested some person to make inquiries in the vicinity · where they had previously resided. Upon such inquiries being made, he learned that she was still living. It does not appear that any attempt was made by either of the parties to keep any track of each other, or to know anything of each other's subsequent life or existence, and in spite of every attempt now to make it appear that their separation was a harmonious one, with the intention of re-uniting, the fact still stands prominently before us that they regarded their separation as final.

It seems that his son, Charles A. Miller, informed his mother, Elizabeth, of the sale of this land in the fall of 1890, whereupon she stated that she would claim an interest in it if she could do so, and from this time dates their subsequent communication with each other.

The law would be very faulty indeed if, under the facts of this case, a claim of this kind could be set up and made to prevail against innocent purchasers, and the plaintiffs in this action stand in that position. No neglect, or bad faith, can be imputed to them. They had every reason to believe that Miller was a single man at the time the conveyance was made, and had no knowledge whatever of the existence of Elizabeth Miller, or of his having been married to her.

Certainly the statutes relating to the disposal of community lands, and the community property laws, were not intended to protect or aid the members of the community in any transaction of this kind, or to place them in a position to defraud innocent purchasers.

I endorse the views expressed by HOYT, J., in his concurring opinion in *Sadler v. Niesz, ante,* p. 182, in this particular, and in this case it should be held that the community relationship between these parties was not in existence as to third persons acting in good faith at the time Miller came to Washington Territory, and that it was never subsequently in force prior to the conveyance of the land to these plaintiffs. Here the husband and wife had separated, and the community relationship, if it could be held to have ever existed, had become abrogated or suspended by their own voluntary acts. The conduct of Elizabeth in separating from her husband, and remaining separated from him as she did, without any effort or desire apparently to assert any of her marital rights, thus placing him in a position where he could palm himself off as a single man, should be held as in effect saying to other people having no knowledge of the facts, that they might deal with him as a single man.

Under such circumstances, and in accordance with equitable principles, she is estopped from now asserting any claims to the land in question as against these plaintiffs.

The decree of the court below is affirmed.

ANDERS, C. J., and HOYT, J., concur.

STILES, J.—I concur for the reasons given in *Sadler v. Niesz.*

DUNBAR, J.—Having wantonly abrogated the marriage relation, I think the wife should be estopped from claiming against those who were led by her own acts to deal with her husband as a single man. I, therefore, concur in the result.

ON RE-HEARING.

SCOTT, J.—This case was formerly before this court, and a decision was rendered affirming the decree of the lower court. A petition for a re-hearing was filed as to one of the minor questions raised by the appellants. It was contended that there had been no cause of action established against the defendant Edward W. Taylor, and that said cause should have been dismissed as to him, which the lower court refused to do. A re-hearing was granted, and upon further argument of the cause it is conceded by the respondents that such action should have been dismissed as to such defendant. Consequently the decision heretofore rendered by this court will be modified to the extent of directing a dismissal of said action as against the defendant Edward W. Taylor, but in all other respects such judgment is affirmed, and allowed to stand as previously directed.

DUNBAR, C. J., and HOYT, ANDERS and STILES, JJ., concur.