[No. 11545. Department One. November 9, 1914.]

WILLIAM MAGEE, *Respondent* v. J. M. RISLEY *et al.,*
*Appellants.*[1]

JUDGMENT — RES JUDICATA — FINALITY — FINDINGS. An oral announcement of a decision by a trial judge cannot be pleaded as *res judicata* or a bar to a second action, where in the first action there was no entry of any final judgment.

HUSBAND AND WIFE—COMMUNITY PROPERTY—RIGHTS OF WIFE LIVING APART—ESTOPPEL—LACHES. A wife who deserted her husband for more than ten years and never filed any claim of a community interest in land standing in the name of her husband, pursuant to Rem. & Bal. Code, § 8772, is estopped from asserting any interest therein after the husband had sold and conveyed the same to a *bona fide* purchaser for value, without notice of the marriage relation.

APPEAL—REVIEW—FINDINGS OF FACT—PRESUMPTIONS—ABSENCE OF EVIDENCE. In the absence of a statement of facts, the fact that the findings are incomplete upon a disputed question does not raise a presumption that no findings thereon were warranted by the evidence, but every presumption is in favor of the decree, in the absence of an affirmative showing that the necessary facts to sustain it did not exist.

Appeal from a judgment of the superior court for Okanogan county, Pendergast, J., entered February 3, 1913, upon findings in favor of the plaintiff, in an action to quiet title, tried to the court. Affirmed.

*Reeves, Crollard & Reeves,* for appellants.

*J. W. Faulkner* and *Smith & Gresham,* for respondent.

ELLIS, J.—This is an action to quiet title to certain water rights, and an easement for a right of way in connection

[1]Reported in 143 Pac. 1088.

therewith, in and over the defendants' land, and to enjoin any interference therewith by the defendants. The court made findings and entered a decree, in the main, in favor of the plaintiff. The defendants have appealed. The first assignment of error is based upon an order sustaining a demurrer to matter set up in the answer by way of affirmative defense. The other assignments of error are predicated solely upon the findings of the trial court incorporated in the decree, and on the decree itself. The evidence is not before us, no statement of facts being presented.

The findings of fact, though extremely minute and lengthy, covering eighteen closely typewritten pages, and doubtless clear enough to the trial court, are hardly intelligible to us without the aid of the evidence. All of the findings, so far as they describe the local situation, are made with reference to certain maps and exhibits and certain indicated points thereon, which maps and exhibits are, of course, not before us. We shall not attempt, therefore, to set out these findings even in their entire substance. We shall content ourselves with stating, briefly as may be, the things found with sufficient clearness in themselves for a discussion of the principal contentions of the appellants as directed thereto.

In 1888, one Francis M. Wright settled upon certain lands in Okanogan county, then unsurveyed, including eighty acres of land now owned by the respondent, and referred to in the findings as the Magee eighty. On March 5, 1889, Wright married. His wife resided with him on the land in question until November 25, 1896, when she deserted him, left Okanogan county, and has never returned. The land upon which Wright had settled remained unsurveyed until November 9, 1896, but was opened to homestead settlement in the year 1886, upon the opening of the former Columbia Indian reservation, embracing all of the lands belonging to all the parties here involved. On May 16, 1898, a patent was issued by the United States government to Wright upon his homestead entry. The patent was recorded in the office

of the county auditor of Okanogan county on June 5, 1905. In September, 1900, Wright commenced an action for divorce against his wife, resulting in findings by the court that he was entitled to a decree of absolute divorce and the custody of their two minor children, and ordering the entry of a decree accordingly. These findings were filed March 15, 1902, but, at the time of the commencement of the present action, no formal decree had been entered thereon. On December 19, 1906, Wright conveyed the Magee eighty to one Johnson, by a deed describing himself and acknowledged by him as "an unmarried man." This deed was recorded June 24, 1907. On July 16, 1908, Johnson and wife conveyed the Magee eighty to the respondent William Magee. This deed was recorded July 27, 1908. On July 22, 1908, Wright conveyed to the respondent Magee by deed, describing himself and acknowledged by him, as "an unmarried man," the water rights and right of way over the appellants' land, which are the subjects of controversy in this action. This deed was recorded August 17, 1908. The court found that Wright's wife never, at any time, filed any claim of community interests in the lands in question, pursuant to statute, Rem. & Bal. Code, § 8772 (P. C. 95 § 59), or in any manner attempted to comply with that statute. It was stipulated in open court that the respondent, William Magee, was an innocent purchaser, and the court found that he was a *bona fide* purchaser within the meaning of the above mentioned statute, and is therefore to be deemed and held the legal and equitable owner in fee simple of the lands in question. The court found that Wright, during his possession of the land known as the Magee eighty, and before any right or interest had been acquired by the appellants in the lands now owned by them, had appropriated, diverted and used the waters in controversy, and had appropriated a right of way across the appellants' land for conveying the water onto the Magee eighty, and had used it continuously thereon for irrigating purposes. The respondent's claim to the water and right of way is through

this appropriation by Wright, under § 2339 of the Revised Statutes of the United States, providing for a recognition by the courts of vested and accrued water rights, and § 2340, declaring: "All patents granted, or preemptions or homesteads allowed, shall be subject to any vested and accrued water rights, or rights to ditches and reservoirs used in connection with such water rights, as may have been acquired under, or recognized by, the preceding section."

The court found facts indicating that the lands owned by the appellants, in which the water rights were claimed and over which the right of way used in connection therewith ran, were public lands of the United States at the time of Wright's original appropriation. The water rights involved consist (1) of the waters of a small lake called Ward lake, located on the appellants' land; (2) certain waters flowing in a draw running from near the lake across the appellants' meadow land to the beginning of the ditch leading into the Magee eighty, which waters flow from certain swamp lands in the appellants' meadow; (3) certain springs on the appellants' land located along the draw above mentioned; and (4) two springs, one called the milkhouse spring, located on appellants' land near what is known as the Riley house, and another on the appellants' land near the north boundary of the Magee eighty.

The court found that the respondent Magee is entitled to the water, in given quantities measured in miner's inches under a four-inch pressure, from each of these sources, save that last mentioned, by and through the appropriation by his grantor, Wright, and is the owner, and entitled to the use and enjoyment, of the first water right in and to these waters during the irrigating season between given times each year, together with a right of way across the appellants' land from Ward lake to the Magee eighty upon the route formerly used by Wright. The findings indicate that Wright's use of the water had been by carrying it through the draw on the surface of the ground to a ditch leading onto the Magee eighty and in its passage across the appellants'

land and meadow, much of it spread out over the meadow.
The waters of the milkhouse spring and the other spring
near the north boundary of the Magee eighty were found
not to be included in any of the water rights which passed
from Wright to the respondent Magee. The court found
that, while the respondent has been the owner of the water
rights above mentioned, the appellants Risley and Riley have
wrongfully prevented the plaintiff from using waters, to his
damage in the sum of $50.

The decree quieted the respondent's title to the water
rights and right of way above mentioned, with the exception
of the two springs referred to, and enjoined the appellants
from molesting or interfering with the respondent in the use
and enjoyment thereof; and decreed that the respondent may
keep in repair the dam and headgate at the outlet of Ward
lake at the present height of dam for storing water in the
lake sufficient to supply him annually with the water from
the lake to which he was found entitled. It also provided that
he might use the water decreed to him all at one time or at
such times as he may desire between noon of June 15 and
noon of August 15, of each year, and convey the same over
the defendants' lands within the right of way formerly used
by Wright, either upon the surface of the ground or partly
on the surface and in a pipe line or flume above or below the
surface.

The several assignments of error present three principal
contentions: (1) that the court erred in sustaining the de-
murrer to the appellants' third affirmative defense; (2) that
the respondent failed to show title, in that Wright was a mar-
ried man when he attempted to convey the Magee eighty to
the respondent's grantor, and when he attempted to convey
the water right and right of way across appellants' land to
the respondent, and his wife did not join in either conveyance;
(3) that the court having found that Wright's original mode
of conveying the water was over the surface of the ground
without flume or pipe, it was, therefore, error to decree per-

mission to his successor, the respondent, to convey the water by flume and pipe line, since the latter would constitute an additional servitude.

I.  The appellants, by way of a third affirmative defense, set up a prior trial of the action by the late Judge E. W. Taylor, who, after hearing all the evidence, orally announced a decision in favor of the appellants.  It is not stated that any findings were made or any decree entered, or even any memorandum or minute made of Judge Taylor's decision. In fact, it seems to be admitted that none of these things was done.  After Judge Taylor's death, this second trial was had. The appellants argue that they should have had the right to prove by oral testimony what the decision of Judge Taylor was in order to establish that decision as *res judicata* of the question tried out and determined adversely to the appellants by Judge Pendergast in the decree appealed from.  This contention cannot be sustained.  It is the judgment of the court touching the same subject-matter and deciding the same issues which constitutes *res judicata*, not a mere verbal announcement of a decision, nor even the making of formal findings of fact and conclusions of law.  In *Wilson v. Hubbard*, 39 Wash. 671, 82 Pac. 154, the trial court, after making formal findings of fact, concluded, as a matter of law, that the plaintiffs take nothing in the action and that Hubbard recover his costs.  The answer in the subsequent action pleaded these findings and conclusions as *res judicata*, but failed to allege that any final decree was entered upon the findings and conclusions.  In passing upon this phase of the case, this court said:

"The record in said cause shows that findings of fact and conclusions of law were made which would have entitled respondent Hubbard to a decree in his favor, but no final decree was entered.  In the absence thereof, said findings of fact and conclusions of law were not *res judicata*.

" 'The weight of authority supports the view that it is not the finding of the court or the verdict of the jury rendered in an action that concludes the parties in subsequent

litigation, but the judgment entered thereon, for the verdict when rendered, is under the control of the court in which the action was tried, and may be set aside for good reasons, and hence it is necessary, in order to support the plea of *res judicata*, that a judgment, decree, or final order should have been actually rendered and entered in the prior action or suit. 24 Am. & Eng. Ency. Law (2d ed.) 792.' "

The rule there expressed is obviously a sound one. Even after the announcement of an oral decision, the court who heard the cause still retains jurisdiction to make formal findings and enter final judgment. Until all these things are done, no formal action has been taken by the court. It is obvious that, had Judge Taylor lived, he might have changed his conclusion when called upon to make specific findings on the evidence, conclusions upon the findings, and a decree based upon both. See, also, *State ex rel. Brown v. Brown*, 31 Wash. 397, 72 Pac. 86, 62 L. R. A. 974; *Gould v. Austin*, 52 Wash. 457, 100 Pac. 1029; *Cline Piano Co. v. Sherwood*, 57 Wash. 239, 106 Pac. 742; *Westmoreland Co. v. Howell*, 62 Wash. 146, 113 Pac. 281; *Gust v. Gust*, 70 Wash. 695, 127 Pac. 292.

Our decision in *Schultz v. Schultz*, 71 Wash. 327, 128 Pac. 660, does not militate against the views here expressed. In that case, the court's decision was entered upon the minutes and a decree contrary to that decision was entered twenty-nine days later, without notice to the adverse party and upon *ex parte* evidence. No question of *res judicata* was involved. The same is also true of the Kansas case mainly relied upon by the appellants: *Aydelotte v. Brittain & Co.*, 29 Kan. 98. The appeal in that case arose upon an application for the entry of a formal judgment *nunc pro tunc* after the expiration of the term of the judge who tried the case, the application being based upon the minutes entered by the trial judge himself, showing a dismissal of the action by stipulation. Upon this application, the court received in evidence an affidavit of the trial judge explaining the minutes. No question

of *res judicata* was involved. If, in the case before us, the appellants had desired to invoke that decision, they should have taken the proper steps to enter a judgment *nunc pro tunc*, wherein the issue as to whether Judge Taylor had actually decided the case or made any record upon which a judgment *nunc pro tunc* could be based might have been tried out and determined.

II.   Appellants' second contention seems to us equally untenable.   Though the findings of the court show that no formal decree of divorce severing the bond of matrimony between Wright and his wife had been entered at the time he conveyed the Magee land, the water rights and the right of way, they also show that it was admitted by stipulation in open court that the respondent Magee was an innocent purchaser in good faith and for value.   Assuming, without deciding, that Wright's wife would have been actually entitled to a community interest in the property as against a purchaser with notice of the marriage, still, the facts found in this case would, under the doctrine announced in *Sadler v. Niesz*, 5 Wash. 182, 31 Pac. 630, 1030, forever estop her from claiming any interest as against the respondent here, who was a purchaser in good faith and without notice.   See, also, *Nuhn v. Miller*, 5 Wash. 405, 31 Pac. 1031, 34 Pac. 152, 34 Am. St. 858; *Schwabacher Bros. & Co. v. Van Reypen*, 6 Wash. 154, 32 Pac. 1061; *Canadian & American Mtg. Trust Co. v. Bloomer*, 14 Wash. 491, 45 Pac. 34; *Daly v. Rizzutto*, 59 Wash. 62, 109 Pac. 276, 29 L. R. A. (N. S.) 467.

III.   It may also be assumed that, ordinarily, an easement acquired under the Federal statute for a water right and right of way becomes fixed when the servient tenement passes from the government by entry and patent, and that the mode of conveying the water may not be thereafter so changed as to increase the burden on the servient tenement. This assumption, however, does not help the appellants in this case. The respondent, in his brief, asserts that, if a statement of facts

had been brought up, it would show that the court's decree permitting the respondent to convey the water by a flume and pipe line was made with the appellants' consent and in response to the claim of the appellants that, if the respondent was adjudged to be the owner of a right of way over their lands, he should be required to confine the water in a flume or pipe line; that counsel for respondent then stated that they did not believe he could be compelled to do so, but respondent was willing to put in a flume or pipe line across the meadow land as soon as he was able. The appellants, in their brief, deny that any such request was made, and urge that the fact that a finding to that effect was not made should be held conclusive against the respondent's assertion. We think, however, that the decree of the trial court is entitled to every presumption necessary to sustain it, in the absence of an affirmative showing that the necessary facts to sustain it did not exist. It seems clear to us from a reading of the briefs that counsel on both sides are sincere in their assertions. The fact that the findings are incomplete upon a disputed question does not furnish sufficient ground for a reversal of the decree. In the absence of a statement of facts sustaining the one claim or the other, we must assume that the fact, if here, would sustain the decree. *Gould v. Austin, supra.*

There are a number of other questions raised by the appellants, but we are in no position to pass upon any of them in the absence of a statement of facts containing all of the evidence.

The judgment is affirmed.

CROW, C. J., CHADWICK, MAIN, and GOSE, JJ., concur.