SARAH KANTOR, Plaintiff, *v.* JOSEPH COHN, et al., Defendants.

(Supreme Court, Kings Trial Term, January, 1917.)

Estoppel — equitable — husband and wife — divorce — dower — deeds.

> It is not necessary to an equitable estoppel that the parties should design to mislead, but it is sufficient if the act is calculated to mislead and actually has misled another acting upon it in good faith and exercising reasonable care and diligence under all the circumstances.

After plaintiff and her husband had separated in consequence of a "rabbinical divorce" each remarried with the full knowledge and acquiescence of the other and in the honest though mistaken belief that they were divorced and free to marry. *Held,* that plaintiff who lived with her so-called second husband and under his name for over twenty years must be deemed a party to the creation of a situation into which, without her participation, her first husband would not have entered, and she is equitably estopped from asserting a claim of dower in real estate purchased by him after their separation and conveyed by the joint deed of himself and the woman he had assumed to marry and represented to be his wife.

ACTION for dower.

Isidor J. Kresel, for plaintiff.

Samuel Kahan, for defendants.

KAPPER, J. Plaintiff, claiming to be the widow of Simon Rubin, deceased, sues to recover dower in two parcels of real property of which Rubin was seized in his lifetime, and which he with one named " Lena, his wife " conveyed, and which by subsequent conveyances came into the possession of the defendants. Plaintiff and Rubin were married in Russia in 1879, and after living together there and in the United States until 1893, during which time three children of the marriage were born, they separated in the supposition that they had become legally divorced. The so-called divorce was worthless. It was the utterance of a Jewish rabbi characterized, whenever reference to such a transaction has been made, as a rabbinical divorce, its making being evidently founded upon incompatibility of husband and wife, the wife determining that she could no longer live with the husband, as she informed the rabbi. Both plaintiff and Rubin, however, looked upon the paper given them by the

rabbi as sufficient in law to dissolve the marital rela-
tions, whereupon and within a few months both again
married, plaintiff marrying Kantor, her present so-
called husband, and Rubin marrying the said "Lena."
These remarriages were with the full knowledge and
acquiescence of both plaintiff and Rubin. Shortly
after marrying Kantor the plaintiff went with him to
Kansas where she has lived with him and under his
name for the past twenty-three years. When she last
lived with Rubin, he was engaged in the real estate busi-
ness; but it does not appear that he then owned any
real property. As to the two parcels now in question,
Rubin became seized thereof in 1904, about ten years
after the separation. The parties to this action agree
that Rubin's real estate operations since his marriage
to "Lena" were many and of considerable financial
importance, said "Lena" being the "wife" named
and who joined in the making of all of Rubin's deeds
of conveyance. Rubin died five years ago. Plaintiff
professes ignorance in fact of Rubin's real estate
operations, and I am not inclined to find that she
actually knew of any specific purchase or sale of real
property by him. She alleges that she first learned
that she had a dower claim in these properties about
four years ago when a lawyer visited her in Kansas
and apprised her thereof. The present action was
brought to trial before a jury. The defendants sought
to establish that plaintiff's marriage to Rubin in
Russia was void upon the ground that he had a former
living wife. This defense failed for lack of proof and
was so ruled upon at the trial. The defendants fur-
ther interposed the defense of an equitable estoppel
against the plaintiff, and by consent the case was taken
from the jury and submitted to the court for deter-
mination upon the facts and the law. If this defense
were to fail, the plaintiff, being now the lawful widow

of Rubin, would be entitled to dower, not alone in the two parcels of property in suit but in all of the real estate transferred by him and the woman " Lena " as " his wife."

Plaintiff argues: " It is true that a widow may be estopped in equity to assert her dower rights. But such an estoppel only arises where the widow has *fraudulently* induced the creation of rights which are inconsistent with her claim of dower. It cannot be *fraudulent* for a wife who lives apart from her husband, and who has no knowledge of his movements and business activities, to fail to warn prospective buyers of his real-estate, of which she has never heard and knows nothing, of the interest which the law gives her therein. And the widow can be estopped only if such conduct does amount to *fraud.*"

If by " fraud " plaintiff means a willful cheat or design to injure innocent purchasers she is correct not alone in her facts but also in the conclusion that her conduct was not " fraudulent." But it is not a correct statement of the law that an estoppel can arise only where the widow " fraudulently " induced the creation of rights which are inconsistent with her claim of dower. Any act, omission or concealment which involves a breach of legal or equitable duty and which is injurious to another suffices as a basis upon which to predicate an estoppel. In dealing with a case of equitable estoppel and in particular with that class of cases dependent upon the application of the doctrine of estoppel by conduct, fraud neither express nor implied necessarily enters into the question. An estoppel by conduct arises as well where a party is silent because of ignorance and such ignorance amounts to negligence to the injury of another, as when he has knowledge and is under a duty to speak and fails. See Big. Estop. (6th ed.) 711. The rights

of innocent purchasers who assert an estoppel do not depend upon the actual title or authority of the party with whom they deal directly, but are derived from the act of the real owner which precludes him from disputing, as against them, the existence of the title or power which, through negligence or mistaken confidence, he caused or allowed to appear to be vested in the party making the conveyance. *McNeil* v. *Tenth Nat. Bank,* 46 N. Y. 329. In so far as the instant case is concerned this plaintiff knew, in law, of her rights twenty-three years ago. She then made it possible by her own conduct for her husband to enter upon illicit relations with another woman. People generally would not know this but could properly assume that the relations were marital and lawful when dealing with the husband where the sanction of a wife was required to the transaction. The estoppel may not be predicable of the mere fact of a married woman leaving her husband and his subsequent assumption of meretricious relations with one whom he holds out as his wife. But where the wife and husband both, though mistakenly, regard themselves as divorced and free to remarry and the husband takes on such new relation in good faith, the wife must be deemed a party to the creation of a situation which without her participation the husband, it must be assumed, would not have entered into. In such a case a purchaser of the husband's real estate has represented to him a " wife " joining, as such, in the deed who but for the conduct of the lawful wife would not have been placed in a position to deceive. It is not necessary to an equitable estoppel that the party should design to mislead, but it is sufficient if the act is calculated to mislead and actually has misled another acting upon it in good faith, and exercising reasonable care and diligence under all the circumstances. *Queensborough*

*Gas & El. Co.* v. *Schoncke,* 76 Misc. Rep. 190. Equitable estoppel is a doctrine of comparatively modern growth. Bisp. Eq. (8th ed.) 433. It has developed largely within the past few years and has received not a little consideration at the hands of judges and text writers. Undoubtedly, excerpts from many reported cases could be furnished upon which an argument in support of plaintiff could be made with plausibility, and possibly with apparent soundness. But it seems to me that the basic consideration upon which it should be determined, at least in this litigation, whether the defense of estoppel by conduct ought to be upheld, is, should a party be barred from the assertion of a right or title by some previous action or conduct on her part which would render the present assertion of her right unjust? In other words: Ought plaintiff to recover? And anything which shows that she ought not is available as a defense whether it is of legal or equitable cognizance. See 1 Cyc. 738. Assuming plaintiff's case in its very best aspect, I think the guiding principle in its determination should be that where there are two innocent persons, he whose mistake, or oversight, or carelessness (even though not willful) has caused the loss, must suffer. It is not necessary that an equitable estoppel rest upon a consideration or agreement or legal obligation. The courts apply it, in accordance with established general principles, in order that the transactions and dealings may result justly and fairly to the parties concerned with them. It prohibits a person, upon principles of honesty and fair open dealing, from asserting rights, the enforcement of which would, through his omissions or commissions, work injustice. *Rothschild* v. *Title Guarantee & Trust Co.,* 204 N. Y. 464.

Both plaintiff and defendants cite cases in other jurisdictions the effect of which is stated in *H. W.*

*Wright Lumber Co.* v. *McCord,* 145 Wis. 93, where the facts were quite similar to those here. In that case the court (p. 104) say: "It appearing to us clearly that Mrs. McCord was convinced from the beginning of the invalidity of the supposed divorce, we think that the well understood principles of estoppel must be held to apply. Knowing that her husband had publicly married another woman, was proclaiming her as his wife, was transacting business every day with people who supposed the second marriage was legal and valid, she allowed this state of affairs to continue without a word of protest. It seems to us she should then have spoken if she would deal fairly with her fellowmen. There are authorities which hold that a woman will not estop herself from claiming dower by silence under circumstances somewhat similar to those present here. Among such authorities are *Martin's Heirs* v. *Martin,* 22 Ala. 86; *Reel* v. *Elder,* 62 Pa. St. 308; *Cazier* v. *Billmire,* 69 Iowa, 397, 28 N. W. 657; and *Cruize* v. *Hinchey,* 143 Mo. 203, 44 S. W. 1052. The greater weight of recent authority, however, supports the position here taken. *De France* v. *Johnson,* 26 Fed. 891; *Norton* v. *Tufts,* 19 Utah, 470, 57 Pac. 409; *Hoig* v. *Gordon,* 17 Grant Ch. (Up. Can.) 599; *Nuhn* v. *Miller,* 5 Wash. 405, 31 Pac. 1031, 34 Pac. 152; *Sadler* v. *Niesz,* 5 Wash. 182, 31 Pac. 630, 1030; *Gilbert* v. *Reynolds,* 51 Ill. 513; *Brown* v. *Kerns,* 6 Ohio N. P. 68."

It should be noted here that so much of the opinion in the case last cited as says that the wife knew that her husband "was transacting business every day with people who supposed the second marriage was legal and valid," was not so in fact, but was the conclusion reached by the court from facts which presumed her knowledge of the law requiring a wife to join in her husband's conveyance of real estate. The reasoning upon which those cases, in which the estoppel was held

to apply, proceeded, is also briefly stated by one of the judges in *Nuhn* v. *Miller, supra,* 408, viz.: " Having wantonly abrogated the marriage relation, I think the wife should be estopped from claiming against those who were led by her own acts to deal with her husband as a single man," while the opposing view is summed up in the following statement made in *Reel* v. *Elder,* 62 Penn. St. 308: " We see no evidence in the cause that any act or declaration of the plaintiff contributed to produce that deception," a statement which seems to me to give too narrow an interpretation to the words " act or declaration " by limiting them, in effect, to affirmative acts, and ignoring the principle that acts of omission amounting to negligence may suffice to estop. In the cases above cited as opposed to an estoppel is the Iowa case of *Cruize* v. *Billmire.* It is of interest to note, in passing, that in the recent case in that state of *Smith* v. *Fuller,* 16 L. R. A. (N. S.) 98, there is a tendency to limit the former case, if not to wholly approve of the contrary view, for the court say (p. 110), " Had plaintiff (claimant) known of Smith's conduct in marrying other women after 1882, and raised no protest or objection thereto, a different case would be presented."

No New York case presenting a state of facts in any essential respect similar to those at bar has been called to my attention. *Wood* v. *Seely,* 32 N. Y. 105, held a dower claimant estopped because she permitted a purchaser of her husband's lands to buy upon a representation made in her presence, " that the land was free and clear from her claim of dower; " and a like ruling upon a similar state of facts was made in *Dougrey* v. *Topping,* 4 Paige, 94. Manifestly neither of those cases aids the defendants here. In *Rundle* v. *Van Inwegan,* 9 Civ. Pro. 328, the element of a *bona*

*fide* purchaser was not involved, the action affecting dower solely in real estate of which the lawful husband died seized. In *Starbuck* v. *Starbuck,* 173 N. Y. 503, the plaintiff obtained a decree of divorce in a foreign state which was not binding upon her husband because of lack of jurisdiction in the foreign court. In an action for dower she was precluded from a recovery upon the ground she could not be heard to impeach a judgment which she herself procured to be entered in her own favor. See, also, *Matter of Swales,* 60 App. Div. 599; affd., 172 N. Y. 651; *Voke* v. *Platt,* 48 Misc. Rep. 273. While the three last cited cases proceeded upon the well-recognized principle that a party may not be heard to impeach a decree in his favor which by his own action he obtained, still it is to be observed that in the *Starbuck* case (p. 509) it was intimated that had there been a remarriage by the husband with one who in good faith had acted upon the belief that the wife's decree was effectual to dissolve her marriage, the question of estoppel would have been presented. If that be so in favor of a rival claimant for dower based upon her subsequent marriage in good faith, although the decree was void, I cannot refrain from viewing the claims of innocent purchasers from a husband who is living in apparently legal matrimonial relations as of as high a character as against a claimant for dower who created a situation by her culpable and negligent acts and omissions which have caused such innocent purchasers to be placed in a position to suffer a loss. The defence of equitable estoppel should be upheld, and the complaint dismissed, with costs.

Judgment accordingly.