## CONTINENTAL SUPPLY CO. et al. v. MACK. (No. 9961.)

(Court of Civil Appeals of Texas. Fort Worth. Nov. 5, 1921. Rehearing Denied Jan. 7, 1922.)

1. Receivers ⊙═137—Statement of court held not binding as to "judgment" to be entered.

Where, on receiver's report of sale setting forth several bids, the court stated "that the bid of the C. S. Company is the best bid, and that I will accept the bid," instructing counsel for receiver to draw up the order to that effect, but not intending that his acceptance of the bid should become operative until he signed the written order, the court was at liberty before such signing to order the property to be readvertised (quoting Words and Phrases, Second Series, Judgment).

2. Judgment ⊙═341—Judgment accepting bid for property in receivership proceeding could be set aside during term.

Where court improvidently accepted a bid from several contained in receiver's report of sale, he could during the term set aside his judgment and order the receiver to readvertise the property, where such bid was not in compliance with the order of the court in that it was not strictly for cash.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

In the matter of the receivership of the Cosbrook Petroleum Company, Theodore Mack, receiver. From a judgment concerning the sale of property, the Continental Supply Company and others appeal. Affirmed.

Thompson, Barwise, Wharton & Hiner and McGown & McGown, all of Fort Worth, Henry M. Brown, of Muskogee, Okl., and Bryan, Stone & Wade, of Fort Worth, for appellants.

Slay, Simon, Smith & Morris and Phillips, Trammell & Caldwell, all of Fort Worth, for appellee.

BUCK, J. On August 4, 1921, an order was entered by the Seventeenth District Court of Tarrant County, directing Theodore Mack, receiver of the Cosbrook Petroleum Company, to advertise the property of said company for sale, and receive written bids therefor, and to submit his report in writing on September 2d. On said last-named date the receiver filed his report of sale, setting forth that one bid received was from D. G. Brown for $65,-250 cash, and a second bid was from appellants for $43,000 cash, and the cancellation of $13,884.01 of the receiver's indebtedness incurred during the receivership and an aggregate indebtedness to the bidders due by the Cosbrook Petroleum Company of $58,-825.91. The hearing on said bids was passed until September 8th, at which time the judge of the court considered the two bids and said:

"The court thinks that the properties of the Cosbrook Petroleum Company ought to be sold; that it is a very difficult matter, on account of the liens not having been classified, for the court to arrive at a just and true judgment, but, having heard the matter discussed, the court is of opinion that the bid of the Continental Supply Company et al. is the best bid, and that I will accept the bid"

—and instructed the counsel for the receiver to draw up the order of the court to that effect. During the noon hour the court became convinced that he had erred in concluding that the Continental Supply Company's bid was the best bid, and ought to be accepted and confirmed by the court, and that afternoon, upon a further hearing and before a written order had been signed by the court or any order entered on the docket with reference thereto, withdrew his expression of opinion, and declined to accept either bid, and ordered the property to be readvertised. It was subsequently sold to a third bidder for $75,000. The Continental Supply Company, the Atlas Supply Company, and R. R. Weed have appealed.

Two questions present themselves for our consideration, to wit:

(1) Did the action of the judge of the court with reference to the bids on the forenoon of September 8th amount to a judgment, or was it merely the expression of an opinion on his part, which did not bind the court?

(2) If the first question be answered that it was a judgment, then is it such a judgment as the court could set aside and hold for naught during the term in which it was entered?

In determining these questions, it is our

duty to give full force and effect to the testimony supporting the judgment. Judge R. E. L. Roy, judge of the Seventeenth district court, testified in answer to the following questions propounded by Mr. Thompson, counsel for appellants:

"Q. I would like to ask the court, when the court made the pronouncement on September 8, 1921, at the conclusion of the hearing on the bid, did not the court mean by his pronouncement that he did accept the bid of the Continental Supply Company and its associates and that he—

"A. The Court: I meant that I would accept it, but didn't have any intention that it would be binding. The remark I made was: 'I will accept the bid of the Continental Supply Company. Mr. Trammell, you get up the order of the court, and I will sign it at the proper time. I, of course, did not have—I did not intend to have it go into effect until I signed the order."

The court further testified in answer to questions propounded by Mr. Wade, of counsel for appellants:

"Q. I would like to ask the court a question. If in making the pronouncement from the bench on September 8th, if it was not the intention of the court at the time he made that pronouncement to then and there accept the bid of the Continental Supply Company and others subject to reducing that order to 'writing?

"A. The Court: No; no.

"Q. At that time it was your opinion that it was the best bid?

"A. The Court: Of course when I said I would accept the bid—Mr. Trammell, you get up the order—of course in my mind, if between that time and the time the order was presented to me I was satisfied I had made a mistake, I did not intend to sign that order.

"Q. But at that time it was your intention that such an order should be entered?

"A. The Court: At that time it was my intention to accept the bid and confirm it—at the time they presented the order to me, if I had not changed my mind, because at that time it was bothering me, and I told you from the bench it was bothering me.

"Q. At that time you had no intention of changing your mind?

"A. The Court: Not when I left this bench.

"Q. You said the property ought to be sold, and that you thought the bid was the best bid, and that you accepted it and told them to prepare an order?

"A. The Court: That is what I have already stated, I can't make it any different.

"Q. (propounded by Mr. Smith, of counsel for receiver). I will ask the court, with the court's permission, this question: If before any order was ever presented to you, I will ask you whether it is or is not a fact that you did change your mind in regard to the matter?

"A. The Court: Before what?

"Q. Before any order was ever presented to you to sign, whether or not you had changed your mind?

"A. The Court: Yes; I had.

"Q. And if you had had in mind the facts and the law as you understood them later, at the time you said what you did from the bench, would you have made the statement from the bench in the first instance?

"A. The Court: I certainly would not have."

There is some testimony tending to show that the appellants did not comply with the order of the court as to depositing with the receiver, prior to the report of the bid to the court, the full 25% of the bid made, and a variance in several other respects, but we will consider the case as if the appellants had made their bid in full compliance with the orders of the court, except that the order of sale provided the bids should be strictly for cash.

In the case of Kidd v. McCracken, 105 Tex. 383, 150 S. W. 885, it appears that the plaintiffs were seeking to enjoin a sale of certain property, and to have declared a mortgage an instrument which upon its face purported to be a deed. The defendant had not prayed for affirmative relief. After the evidence was in, and in a trial before the court, the court expressed his ruling with reference to admission of certain testimony, and thereby indicated that he would give a judgment for defendants. Whereupon the plaintiffs asked leave to withdraw their announcement of ready for trial and take a nonsuit, but the court concluded that he had already announced his decision and denied plaintiff's motion. The court in discussing the matter said:

"It seems to us to be immaterial to the exercise of the right to take a nonsuit, that the plaintiff is made aware of the court's view of the case from the expression of the court's opinion, or from any other source. Such knowledge may serve as the vital reason why the party desires to get his case out of court. His information of how the court will decide cannot affect the plaintiffs' right to a nonsuit, where the decision has not been announced. * * * The word, 'decision,' as used in the statute, means the court's judgment which is made a part of the record immediately upon its rendition, but the court's opinion on the different phases of the case is nothing more than an expression of the judge's views. In the case at bar the judge, at the time the nonsuit was demanded, had done nothing more than to express his opinion of the case. He had not announced his decision or judgment."

See, also, Adams v. Railway Co. (Tex. Civ. App.) 137 S. W. 437. In Magee v. Risley, 82 Wash. 178, 143 Pac. 1088, a trial was had at a former term, and the judge hearing the case announced orally his decision in favor of the appellants. It does not appear that any written findings were made or any decree entered, or even a memorandum or minutes made of such decision. Later, the judge died, and on a second trial the parties, in favor of whom the judge on the former trial had expressed himself, urged that they had a right to prove by oral testimony what the decision of the former judge was, in order to establish that decision as res judicata of the question tried out and determined

adversely to the appellants. The Supreme Court of Washington said:

"This contention cannot be sustained. It is the judgment of the court touching the same subject-matter and deciding the same issues which constitutes res judicata, not a mere verbal announcement of a decision, nor even the making of formal findings of fact and conclusions of law. * * * Even after the announcement of an oral decision, the court who heard the cause still retains jurisdiction to make formal findings and enter final judgment. Until all these things are done, no formal action has been taken by the court. It is obvious that, had Judge Taylor lived, he might have changed his conclusion when called upon to make specific findings on the evidence, conclusions upon the findings, and a decree based upon both."

See Freeman v. Brown, 115 Ga. 27, 41 S. E. 385; Lytle v. De Vaughn, 81 Ga. 226, 7 S. E. 281. In Shaughnessy v. Northland Steamship Co., 94 Wash. 325, 162 Pac. 546, Ann. Cas. 1918B, 655, the plaintiff sued for personal injuries, and was met with the contention that the Workmen's Compensation Act (Laws 1911, p. 345) had withdrawn the controversy from the jurisdiction of the court. On appeal from a judgment in his favor, it was contended that judgment had been rendered against him, and that the trial court could not again enter a judgment therein. The court said:

"It is contended that the trial court had no jurisdiction to render the judgment in favor of the respondent which is here appealed from because it had previously rendered a final judgment of dismissal in appellant's favor upon its motion for judgment notwithstanding the verdict. Upon the return of the verdict, the clerk, by direction of the court, withheld entry of judgment thereon pending appellant's motion for judgment notwithstanding the verdict. Thereafter that motion was argued and decision thereon taken under advisement by the court. Thereafter the trial judge announced in open court, in substance, that he had concluded to grant appellant's motion for judgment notwithstanding the verdict, when it evidently was understood by the court and counsel for both parties that judgment be prepared accordingly; and since the ground upon which the court was inclined to so hold was that respondent had no right of action in the courts because of the passage of our Workmen's Compensation Act, it apparently was then contemplated that judgment of dismissal would be prepared in such form that the question of respondent's right to maintain the action in the light of our Workmen's Compensation Act might be presented to this court upon a short record. The matter was to be postponed until counsel could prepare some such form of judgment. However, at that time the clerk of the court did make a brief minute entry which could be construed as a final judgment of dismissal of the case in harmony with the views then expressed by the court. This entry was made without the knowledge of the court or of counsel for either party as to its contents. Thereafter, counsel for both parties were again before the court for the purpose of having formal judgment entered, when the judge announced that he had reached a different conclusion upon further reflection and had become of the opinion that the Workmen's Compensation Act did not preclude respondent from maintaining this action, in view of the fact that his injuries resulted while he was in maritime service. * * * It follows that the judgment here appealed from is the only judgment that was actually rendered in the case."

[1] Some of us are of the opinion that the judgment below should be affirmed on the ground that the court did not render a judgment, when he stated that in his opinion the bid of the appellants was the best bid, and that he would accept it. The fact that the trial court may have given utterance to expressions indicating his belief that his words heretofore quoted constituted an acceptance of appellants' bid and a confirmation of the sale to appellants, and that appellees in their motion for a new trial referred to the court "accepting the bid of the Continental Supply Company, the Atlas Supply Company, and R. R. Weed," does not fix the character and effect of the court's action. If in fact the court did not intend that his acceptance of the bid should become operative until the receiver's counsel had prepared the written memorandum and order accepting such bid, and the court had adopted such order, and in view of the fact that the court positively stated that he did not have any intention that his oral statements heretofore mentioned should be binding, some of us think that such expressions by the court and by the counsel for appellees were mere expressions of opinion as to the nature and effect of the court's statement, and would not bind the trial court in entering a final judgment, nor be binding upon the appellate court on review. In 2 Words and Phrases, Second Series, p. 1244, the following language is used:

"According to 3 Bouvier's Inst. § 3297, a 'judgment' is something more than the finding of the facts in controversy, but is a solemn sentence of the law pronounced by the court upon the facts found. According to Black on Judgments, § 1, a 'judgment' is always a declaration that a liability recognized as within the jural sphere does or does not exist, and, as an action is instituted for the enforcement of a right or the redress of an injury, a 'judgment' as the culmination of the action declares the existence of the right, recognizes the commission of the injury, or negatives the allegation of one or the other, but, as no right can exist without a correlative duty, nor any invasion of it without a corresponding obligation to make amends, the judgment necessarily affirms or else denies that such a duty rests upon the person against whom the aid of the law is invoked. From these definitions, it follows that no matter how clearly and decisively the entries in the record may indicate what the ultimate 'judgment' or the sentence of the law when pronounced will be, until it is so pronounced, there is no 'judgment,' and even

though the court has fully found the facts and stated the conclusions of law, or the jury has returned a complete verdict which has been accepted, neither of these acts will constitute a 'judgment.' "

Citations are given supporting this announcement from courts of final jurisdiction of various states, including Warren v. Shuman, 5 Tex. 441; Scott v. Burton, 6 Tex. 322, 55 Am. Dec. 782; Black on Judgments, § 3.

[2] But admitting for the present that the statement of the trial court constituted a judgment, was it such a judgment that the court could set aside and hold for naught at the term in which it was entered? Appellants urge that the statement made by the trial court constituted an acceptance of the bid by the appellants for the property of the Cosbrook Petroleum Company and a confirmation of the sale theretofore made to the appellants by the receiver, and that the court, while exercising the functions of a court was also a vendor, and that his acceptance of the offer made by the appellants to the receiver closed the contract, and, except for fraud, collusion, accident, mutual mistake, or breach of trust or misconduct upon the part of the purchaser, or by a party connected with the sale, which has worked injury to the party complaining and was unknown to him at the time the sale was confirmed, that such confirmation cannot be set aside. In support of this contention, appellants quote from Tardy's Smith on Receivers (1920 Edition) vol. 2, p. 1815, § 663, as follows:

"After the sale is complete and has been in effect confirmed by the court, the receiver is not in a position to rescind the sale. A purchaser at a receiver's sale submits himself to the jurisdiction of the court, and the court, in case it sets the sale aside at the instance of the receiver, may require that the purchaser be indemnified for any losses suffered by him as a consequence of the sale being rescinded by the receiver."

In the cases of Files v. Brown, 124 Fed. 133, 59 C. C. A. 403, and Morrison v. Burnette, 154 Fed. 617, 83 C. C. A. 391, Judge Sanborn, Circuit Judge, indulges in rather strong language as to the power of a court to set aside its confirmation of a sale under a receivership. In the last-cited case, he says:

"But there is a marked and radical distinction between the situations, the rights of the parties, and the established practice before and after the confirmation of the sale. The purchaser bids with full notice that the sale to him is subject to confirmation by the court and that there is a power granted and a duty imposed upon the judicial tribunal when it comes to decide whether or not the sale shall be confirmed to so exercise its judicial power as to secure for the owners of the property the largest practicable returns. He is aware that his rights as a purchaser are subject to the rational exercise of this discretion. But after the sale is confirmed that discretion has been exercised. The power to sell and the power to determine the price at which the sale shall be made has been exhausted. From thenceforth the court and the successful bidder occupy the relation of vendor and purchaser in an executed sale, and nothing is sufficient to avoid it which would not set aside a sale of like character between private parties. Hence the rule is settled, and it seems to be universally approved that after confirmation of a judicial sale neither inadequacy of price, nor offers of better prices, nor anything but fraud, accident, mistake, or some other cause for which equity would avoid a like sale between private parties, will warrant a court in avoiding the confirmation of the sale or in opening the latter and receiving subsequent bids."

We do not think that the trend of opinion is in accord with the radical announcement made by Judge Sanborn in these two decisions. It may be noted that in Morrison v. Burnette, Judge Hook, associated with Judge Sanborn on the federal circuit bench, concurred only in the result, and presumably did not agree with some of the vigorous language used. In re Receivership of First Trust & Savings Bank, 45 Mont. 89, 122 Pac. 561, Ann. Cas. 1913C, 1327, the Supreme Court of Montana, in laying down the rules applicable to sales by receivers, after reviewing cases, said:

"From the foregoing and other cases we deduce the following rules of law: (a) That a court of equity has jurisdiction to set aside an order of sale, either before or after confirmation, whenever it is made to appear that the same was entered by mistake, inadvertence, or improvidence; (b) that the purchaser at such sales takes the property with notice that the court has power, in its discretion, to set it aside; (c) that, while mere inadequacy of consideration is not ordinarily in itself sufficient to warrant the court in setting aside a sale to a bona fide purchaser, if it shall appear that for some reason, disclosed or undisclosed, the property had been greatly undersold and the purchaser has, even in good faith, obtained an undue advantage of the persons for whose benefit the sale was made, the court may, in its discretion, set it aside; (d) that the fact that the purchaser acted in good faith, without intention to obtain an unfair advantage, and has fully complied with the terms of the sale, or even that he cannot be placed in statu quo, does not affect the power of the court to rescind the sale, but all of the facts should be taken into consideration by the court in the exercise of its discretion."

In Weeks v. Weeks, 106 N. Y. 626, 13 N. E. 96, the following is said:

"The general power of a court to modify or vacate its judgments or orders for fraud or irregularity, where it has acted inadvertently, or improvidently, is well settled. It is true the law protects the title of a third person, being a bona fide purchaser on a sale on an execution under a judgment voidable, but not void, although the judgment is subsequently

reversed for error. * * * This principle does not, we think, preclude the court from modifying or vacating a summary order made improvidently in the course of an action, although the rights of third persons may be affected thereby."

In the Files v. Brown Case, supra, the judgment, the sale of which was confirmed by the court, had been assigned, and in the Morrison v. Burnette Case, supra, the lease had been executed. In the Files Case the court held that there was not sufficient evidence to show that at the time of the sale the price offered was inadequate. In the Morrison Case inadequacy of price as to the 80 acres of the 160 acres originally sold was alone in question, Morrison and his associates having bid originally for the entire 160 acres, and the other bidder having later made a bid for 80 acres. In Blackburn v. Knight, 81 Tex. 326, 16 S. W. 1075, trial was had and judgment rendered for defendant; plaintiff appealed and gave an appeal bond; during the term and after the appeal bond had been filed the district judge, of his own motion, set aside the judgment for defendants, and entered judgment for plaintiff for a part of the property involved, and held that such order was within the power of the court. The court said:

"We regard the proposition as established by our decisions that the district court has such power and control over its judgments as that during the term at which any judgment may be rendered it may lawfully set aside, reform, amend, or correct it, and this though an appeal or a writ of error bond has been filed by the party supposing himself aggrieved by the judgment"—citing cases. "If a court has the power to set aside and reform its judgment, we see no reason why it should not have the power to set it aside and render it for the opposing party during the term, as was done in this case. Where it discovers that it has erroneously entered judgment for one party, when it should have rendered it for the other, we think that it has the power and it is its duty, before the judgment becomes final, to correct the error fully. With the district court during its term the aphorism seems to apply, as in the case of individuals, 'It's never too late to mend.'"

Certainly the testimony of the trial judge in this case presents a case of "improvidence" and "inadvertence," and we think that the court below did not err in setting aside its former announced judgment, if it was a judgment, and in declaring the sale under the previous order to be void, and ordering the receiver to sell the property at a subsequent sale. We believe this conclusion is in harmony with the views expressed by our Supreme Court, and is in accord with sound sense and good judgment. In this case, we do not believe the bid of appellants was in compliance with the order of the court, in that it was not strictly for cash. It appears that the indebtedness of the es-

tate was quite large, and it does not appear that the receiver, if appellants' bid had been accepted, would have had sufficient funds to pay anything on the debts held against the estate by parties other than appellants. We all agree that the judgment should be sustained on the ground that the court did not err in setting aside the judgment of confirmation.

Judgment affirmed.

## On Motion for Rehearing.

Appellants call our attention to certain inaccuracies in the findings of fact by this court in the original opinion. The part of the opinion reading as follows:

"During the noon hour the court became convinced that he erred in concluding that the Continental Supply Company's bid was the best bid and ought to be accepted and confirmed by the court, and that afternoon, upon a further hearing and before a written order had been signed by the court or any order entered on the docket with reference thereto, withdrew his expression of opinion and declined to accept either bid, and ordered the property to be readvertised. It was subsequently sold to a third bidder for $75,000.00"

—is changed as follows:

"During the noon hour the court became convinced that he erred in concluding that the Continental Supply Company et al.'s bid was the best bid, and ought to be accepted and confirmed by the court, and that afternoon so informed one of appellants' attorneys. Upon further hearing, and before a written order had been signed by the court or any order entered on the docket with reference thereto, he withdrew his expression of opinion and declined to accept either bid, and ordered the property to be readvertised."

It does not appear from the statement of facts or the transcript that the property was sold for $75,000. The statement was made in the oral argument by counsel for receiver that the property had been sold for $75,000, and counsel was asked if the record showed such to be the case, and counsel replied that it did. But it appears that this was error. We have considered appellant's motion for rehearing, and conclude that the same should be overruled.

CONNER, C. J. (concurring). In deference to the able argument and extended discussion of counsel for appellants on motion for rehearing, I wish to say that, on original consideration of this case in consultation, I was very strongly inclined to the view of appellants that the evidence undoubtedly showed that the sale to them had in fact been confirmed by the court, and that hence it should not be set aside for any mere inadequacy of price or irregularity. But I entertained such doubt of the power of the court to confirm a sale, made partly for cash and partly in the paper of appellants, con-

trary to the terms of the order of sale and without the consent of all the lien-holders and creditors of the receivership being shown, that I felt unwilling to hold that the trial court was in error in setting aside the sale as he did. I therefore concurred in the conclusion reached by the majority to affirm the judgment.

While, as expressed in some of the authorities, the court is in the attitude of a vendor whose act in confirming a receivership sale may not be lightly set aside, yet the court is also in a sense an agent or representative of the creditors of the receivership, and his power to sell or power to confirm a sale should therefore be exercised in accord with established legal principles. It has been often held in this state that a power to sell, in the absence of specific authority to do otherwise, will not authorize a sale partly for cash and partly on credit or for property other than cash, and none of the cases that I have been able to consider go so far as to say that the confirmation of a sale by the court will give validity to a sale which the court was originally without power to make. In the case before us, as I view it, the order for the sale of the property, as originally made and as advertised, was for cash. Presumably all bidders and others who may have considered the advisability of purchasing so considered the terms, and were influenced thereby, and it is not shown that all other lienholders and creditors of the receivership, of which the record discloses many, consented to the sale made upon the terms as confirmed by the court. Under such circumstances, I still feel unwilling to say that the trial court erred in setting aside the sale as he did. I therefore concur in the ruling of the majority in overruling the motion for rehearing.